568 So.2d 128 (1990)
Gladis Ondina Aguilera deREYES, et al.
v.
MARINE MANAGEMENT & CONSULTING LTD., et al.
No. 90-C-0009.
Court of Appeal of Louisiana, Fourth Circuit.
April 26, 1990.
On Rehearing September 11, 1990.
Writ Granted December 14, 1990.
Robert H. Murphy, Douglas L. Grundmeyer, William A. McLellan, Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, for relator.
Bruce Waltzer, Paul S. Weidenfeld, Michael G. Bagneris, Waltzer & Bagneris, New Orleans, for respondent.
Before SCHOTT, C.J., and KLEES and ARMSTRONG, JJ.
SCHOTT, Chief Judge.
On the application of Wallem Shipmanagement, Ltd., relator, we granted certiorari in order to review a judgment of the trial court overruling relator's exception of lack of personal jurisdiction. The issue is whether there are sufficient contacts between relator, a foreign corporation, and the forum to support the legal conclusion that relator is subject to the general jurisdiction of the trial court here in Louisiana.
This case arises out of an action filed by plaintiff in New Orleans, seeking damages under the Jones Act and general maritime law of the United States, for the wrongful death of her husband on the high seas. The decedent, a Honduran seaman, died of asphyxiation while working aboard the *129 M/V Brassie, which was en route to Vancouver, Canada. Plaintiff, also a Honduran, filed this action for damages against several defendants, one of whom is relator, a Hong Kong corporation. Wallem was hired to manage the M/V Brassie by her owner Mamby Shipping, a Panamanian corporation.
According to relator's director, Patrick Taylor, relator was "to make the ship operate, supply the crew necessary (sic), arrange insurances, and generally arrange for the technical management of the ship as against the commercial management." This included responsibility for the maintenance and upkeep of the vessel. To accomplish this, relator had to supply a crew for the ship which resulted in relator's involvement with Louisiana. Relator's home office in Hong Kong hired Marine Consulting and Management (MCM) of New Orleans, Louisiana, to act as its crewing agent since MCM had could more readily recruit seamen there and had more connections in Honduras. Most of the time relator would issue crewing instructions to MCM by telex. Sometimes, however, it would send crewing orders through its affiliate field office located in New Orleans which would pass the orders on to MCM. Source of the crewing orders was always relator's Hong Kong office.
Relator's office in New Orleans was a specialized field office staffed by four people, two of whom were supervisory personnel. That office would carry out technical instructions and service and repair all technical problems occurring on any ship managed by relator and located in this hemisphere. The office maintained a bank account to pay for local operating costs incurred while doing business in New Orleans.
A Louisiana Court may exercise personal jurisdiction over a nonresident defendant under the conditions of the state's "long-arm" statute, LSA-R.S. 13:3201. Section (B) of the statute authorizes the exercise of personal jurisdiction over a nonresident to the limits allowed by constitutional due process. Superior Supply Co. v. Associated Pipe and Supply Co., 515 So.2d 790, 792 (La.1987). In deciding whether the long arm statute applies, the court must first determine whether it is being called upon to assert specific or general jurisdiction over the defendant. Specific jurisdiction attaches when the cause of action itself arises out of the defendant's activities within the forum state. While plaintiff argues that specific jurisdiction applies in this case we are not persuaded by this argument and conclude that personal jurisdiction may be gained only by way of general jurisdiction. For general jurisdiction to attach, due process considerations require that there be sufficient contacts between the forum state and the foreign defendant. The nature of the contacts must constitute continuous and systematic general business contacts, such as the type of contacts found to exist in Perkins v. Benquet Consolidated Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952).
In Perkins the Court specifically addressed the issue of subjecting a foreign corporation to the jurisdiction of the court when the cause of action does not arise within the forum or relate to the business or activities of the corporation within the forum state. It involved the exercise of jurisdiction by Ohio over a Philippine mining corporation. The corporation conducted its operations in the Philippines until it was forced to leave due to the Japanese occupation of that country during World War II. The general manager and principal stockholder of the corporation returned to Ohio where he maintained an office. The office files and bank accounts were kept in Ohio, and several directors' meetings took place there. From the Ohio office, correspondence was sent, and the general manager supervised the rehabilitation of the corporation's Philippine properties.
In upholding jurisdiction over the foreign corporation, the court reasoned that the essence of the exercise of jurisdiction is fairness to the defendant: "The amount and kind of activities which must be carried on by the foreign corporation in the state of the forum so as to make it reasonable and just to subject the corporation to the jurisdiction of that state are to be determined *130 in each case." Perkins, 72 S.Ct. at 418. Consideration of the circumstances is determinative and jurisdiction is inappropriate when the foreign defendant has no contacts, ties or relations with the forum state.
Helicopteros Nacionales De Columbia, S.A. v. Hall, 466 U.S. 408, 413, 104 S.Ct. 1868, 1872 & 1875, 80 L.Ed.2d 404 (1984), involved a helicopter accident in Peru, in which four United States citizens were killed. Neither the decedents nor their survivors, who filed suit in Texas, were Texas domicilliaries. Defendant, a Columbian corporation which owned the helicopter, was providing transportation for the decedents. They were employees of a Peruvian consortium which was the alter ego of a joint venture whose headquarters was in Houston, Texas. The Supreme Court held that Texas could not exercise personal jurisdiction over defendant because its contacts with Texas were not continuous or systematic. Its contacts consisted of sending its chief executive officer to Houston for a contract negotiation session; accepting into its New York bank account checks drawn on a Houston bank; purchasing helicopters, equipment, and training services from Bell Helicopter for substantial sums; and sending personnel to Bell's facilities in Fort Worth for training. All of this interchange resulted from only one purchase agreement for a fleet of helicopters.
The contacts between the defendant and the forum in the present case are more like those in Perkins than in Helicopteros. First, relator operated a physical office in New Orleans for approximately two years. This office provided technical supplies and repairs for this entire hemisphere. Although this office was initially instructed by the Hong Kong office, it conducted extensive business activity using Louisiana as its port of entry and exit and its hub where business was conducted and records were kept. Defendant rented office space, maintained a bank account, and paid city and state taxes. In addition, it sometimes acted as a liaison between the Hong Kong office and MCM. Second, in order to meet crewing needs for the M/V Brassie, decedent's vessel, relator's headquarters in Hong Kong had systematic contact with MCM, a New Orleans company which acted as its crewing agent. Decedent was hired by MCM and, therefore, his employment with relator stems directly from relator's activity within this forum. Thus, this is not simply a matter of a foreign defendant having only periodic contact with the forum or a one time business deal as in Helicopteros.
A definite connexity exits between relator and New Orleans. Relator purposefully availed itself of New Orleans business contacts and the benefits derived therefrom. It made itself a member of the New Orleans maritime community. Although the cause of action sued upon did not arise in New Orleans and does not relate directly to relator's activities within this State, as is necessary for a finding of specific jurisdiction, the facts do establish that its activities within this state were of a continuous and systematic nature, sufficient for general jurisdiction to attach. Even though the contacts are not as general as those found in Perkins, the quality and nature of the activities conducted by defendant within this state make it reasonable and just to subject it to the jurisdiction of the trial court.
Finally, in support of its case, relator cites the case of Palmer v. Kawaguchi Iron Works, LTD., 644 F.Supp. 327 (N.D. Ill.1986), wherein the court did not find that the facts supported the assertion by the state court of personal jurisdiction over a foreign corporate defendant. In reaching this conclusion, the court reasoned that a determination of whether general jurisdiction exists requires consideration of the degree, permanence and continuity of the defendant's activities, and the character and extent of the activities. In Palmer, a Japanese corporation had a single service representative who resided in the State of Illinois. Plaintiff was the employee of a Philadelphia company which purchased a product from defendant. Plaintiff was injured when the machine malfunctioned. "The sum total of defendant's contact with Illinois is the presence of one service representative."
*131 Palmer is distinguishable from the instant case. The only contact the Palmer defendant had with the state of Illinois was one service representative. Here, relator had not one but four employees at the New Orleans office, and the office operated a telex so as to maintain constant contact with the main office. One reason defendants operated a field office in New Orleans was convenience of location. In addition, relator contracted with a New Orleans business to act as crewing agent for the M/V Brassie and that business hired the decedent. Both business ties with this state lasted for several years. We have concluded that this case's facts support the conclusion that relator is subject to the general jurisdiction of the trial court, and the judgment overruling relator's exception is affirmed.
AFFIRMED.
Before SCHOTT, C.J., and KLEES and ARMSTRONG, JJ.

ON REHEARING GRANTED
SCHOTT, Chief Judge.
On the application of relator, Wallem Shipmanagement, Ltd., we granted a rehearing limited to the issue of the second prong of the jurisdictional test set forth in Asahi Metal Industry, Co. v. Superior Court, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).
In our original opinion we concluded that personal jurisdiction over relator could be obtained in this case not by way of specific jurisdiction but by general jurisdiction. We further concluded that general jurisdiction attached because relator's contacts with Louisiana were continuous and systematic business contacts and were sufficient to support Louisiana's jurisdiction over this dispute.
In Asahi the court held that an inquiry of this type does not end with the conclusion that the defendant had sufficient contacts with the forum state, but continues with the question of whether subjecting the defendant to personal jurisdiction would be reasonable so as to comport with traditional notions of fair play and substantial justice. The court explained that a determination of the reasonableness of the exercise of jurisdiction in a case depended upon an evaluation of these factors: 1) the burden on the defendant, 2) the interests of the forum state, 3) the plaintiff's interest in obtaining relief, 4) the interest of the interstate judicial system in obtaining the most efficient resolution of controversies, and 5) the shared interest of the several States in furthering fundamental social policies.
At the outset respondent-plaintiff contends that these five factors were not intended by the court to be considered at all once the court concluded that there were sufficient contacts between the defendant and the forum state. She asserts that these factors are available to a court to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required. Citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). A reading of the court's discussion of the factors at 105 S.Ct. 2184 does not support this interpretation. Once the court finds minimum contacts the issue of fair play and substantial justice must still be addressed in the light of the five listed factors.
With respect to the burden placed on the defendant to litigate the case in Louisiana respondent argues that this factor should not even be available to relator because it chose to conduct its operations from New Orleans. In connection with this rehearing we have reconsidered our own original recitation of the facts and find no reason to restate them. In effect, we incorporate our original opinion herein by reference. Under those facts relator's contact with Louisiana consisted of the maintenance of a small, specialized field office manned by a handful of employees for the purpose of carrying out the orders and policies emanating from relator's Hong Kong headquarters and relating to ships under relator's management in the Western Hemisphere. Just as the Supreme Court of the United States found in Asahi that it would have been a severe burden on *132 that Japanese company to traverse the distance to California and litigate its dispute with a Taiwanese company in a foreign nation's judicial system we believe that it would be a severe burden on this Hong Kong company to come here to litigate its dispute with a Honduran citizen. Respondent contends that relator is precluded from arguing that this jurisdiction is burdensome because it opted to set up operations here and must take the consequences of being subject to our court's jurisdiction. This ignores the Asahi approach that it may be unfair and unreasonable to impose upon a defendant of defending a lawsuit in a place even though it had some contacts with the place.
The next factor, the interests of the forum state, weighs heavily against the imposition of jurisdiction on relator. This is a suit between a Honduran national and a Hong Kong company on a cause of action that arose on the high seas while decedent, a Honduran, was on a foreign flag ship that never came to Louisiana. Louisiana has no interest in the case.
The next factor, the plaintiff's interest in obtaining relief, also weighs against jurisdiction in Louisiana. We assume this factor to mean the plaintiff's ability to prosecute her claim here as opposed to some other jurisdiction such as Hong Kong or Honduras. Since the accident happened on the high seas and since neither the decedent nor plaintiff was ever here in Louisiana there are no witnesses here. Respondent's statement that New Orleans is the only place in the hemisphere where relator can be found is specious since nothing done at relator's New Orleans office had anything to do with the accident or claim.
The next factor, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, likewise weighs against respondent. Since Louisiana has no interest in this foreign controversy between foreigners, its assumption of jurisdiction would be counter-productive toward the efficient resolution of controversies properly pending before our courts. The goal of state courts to provide and promote efficient judicial administration would be hampered by an influx of cases which concern accidents on foreign vessels outside of the United States and resulting tort claims between foreign nationals.
Finally, the last factor, the shared interest of the several states in furthering fundamental substantive social policies, also weighs against jurisdiction. Respondent argues that allowing relator to operate in Louisiana and compete with Louisiana citizens without the obligation of accountability in Louisiana courts would be a violation of the social policy of the several states to protect citizens from unfair competition. This erroneously assumes that what relator does in Louisiana constitutes significant competition with domestic companies. While relator's Louisiana office may have been advantageous to its Hong Kong business it was not competing for business here. It was only providing relator with a convenient location from which its orders for staffing and servicing vessels in the Western Hemisphere could be carried out. We are unable to conclude that using this small contact with Louisiana as a basis for allowing this suit to continue in Louisiana would further the substantial social policies of the several States.
We have concluded that all of the factors prescribed in Asahi militate against subjecting relator to the personal jurisdiction of our courts. Consequently, to do so would be unreasonable and unfair and would offend due process considerations.
Accordingly, the judgment overruling relator's exception of lack of personal jurisdiction is reversed and set aside and there is judgment in favor of defendant, Wallem Shipmanagement, Ltd., and against plaintiff, Gladis Ondina Aguilera deReyes dismissing her suit at her cost.
REVERSED AND RENDERED.