586 So.2d 103 (1991)
Gladis Ondina Aguilera de REYES, as Widow and Personal Representative of the Estate of Jorge Alberto Reyes, deceased
v.
MARINE MANAGEMENT AND CONSULTING, LTD., et al.
No. 90-CC-2214.
Supreme Court of Louisiana.
September 9, 1991.
Rehearing Denied October 10, 1991.
*104 Bruce C. Waltzer, Paul S. Weindenfeld, New Orleans, for applicant.
Robert H. Murphy, Douglas L. Grundmeyer, William A. McLellan, Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, for respondents.
DENNIS, Justice.
The question presented is whether the Due Process Clause of the Fourteenth Amendment denies Louisiana courts personal jurisdiction over a non-resident ship management corporation, which maintained a corporate office in Louisiana out of which it continuously and systematically conducted a regular but limited part of its general business, in a suit indirectly related to but not arising out of its activities in the state.
Jorge Alberto Reyes, a Honduran seaman, was fatally asphyxiated while serving aboard the M/V BRASSIE in international waters off the coast of Oregon. His former spouse and mother of his two minor children, Gladis Ondina Aguilera de Reyes, a citizen of Honduras, brought this wrongful death action for herself and the children, under the general maritime law and the Jones Act, 46 U.S.C. Appx. § 688.
Plaintiff named as defendant, among other parties, Wallem Shipmanagement, Ltd., a Hong Kong ship management corporation with its principal place of business in Hong Kong. By a contract of management with the owner of the M/V BRASSIE, Wallem had undertaken to employ officers and crew for the vessel and to perform all noncommercial management services necessary for the vessel, its officers and crew, including maintenance, repairs, supplies, and personnel services. Pursuant to its obligation as ship manager, Wallem employed Jorge Alberto Reyes to serve as a seaman and member of the crew of the M/V BRASSIE approximately six months prior to his fatal accident.
Wallem Shipmanagement provides world-wide ship management services to the owners of as many as 60 to 100 vessels operating in international trade around the globe. Wallem directed the performance of the bulk of its ship management services by electronic communications from its principal office in Hong Kong. However, it also stationed full time employees in regional corporate offices at strategic points around the globe to attend to regularly recurring matters that required personal, on-site inspection, analysis, estimation, negotiation, transaction or handling. These regional corporate offices were located in New Orleans, London, Ravenna (Italy) and Singapore. The New Orleans office was staffed by four employees and was in charge of such ship management needs in the waters around North and South America and the western hemisphere.
On several occasions Wallem engaged Marine Management and Consulting, Ltd. (MMC) to recruit Honduran seamen as members of crews aboard vessels in its charge. MMC is a Louisiana corporation, in the business of managing and crewing vessels, with its principal office in New Orleans. In fact, Wallem hired the decedent *105 Reyes as a member of the M/V BRASSIE crew through the services of MMC. Moreover, at the time of the decedent's employment, MMC and Wallem maintained offices in the same small building in New Orleans. There were regular communications between the New Orleans offices of Wallem and MMC involving requests for assistance in employing Honduran seamen or in handling personal matters for Honduran seamen aboard Wallem vessels.
Defendant Wallem challenged the district court's in personam jurisdiction by declinatory exception. The district court overruled the exception. The court of appeal granted Wallem's application for a supervisory writ and, after rehearing, reversed the district court's ruling and sustained the exception as to in personam jurisdiction. 568 So.2d 128 (La.App. 4th Cir. 1990). The appeals court concluded that Wallem had purposefully established sufficient minimum contacts with the forum state upon which to base general personal jurisdiction but that maintenance of the suit nevertheless would offend traditional notions of fair play and substantial justice under the two-part contacts-fairness analysis articulated by the United States Supreme Court. Asahi Metal Industry Co., Ltd. v. Superior Court of California, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987); Burger King Corporation v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). We granted certiorari. 571 So.2d 638 (La. 1990).

BASIC PRINCIPLES OF PERSONAL JURISDICTION
Due process requires that in order to subject a nonresident defendant to a personal judgment, the defendant must have certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. International Shoe Co. v. Washington, 326 U.S. 310, 320, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945). The rule of International Shoe has continued to remain viable and integral in due process analysis of the exercise of personal jurisdiction. See Asahi Metal Industry Co., supra; Burger King Corp., supra; Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).
In interpreting the due process clause, the United States Supreme Court has recognized a distinction between two types of personal jurisdiction"general" and "specific" jurisdiction. Burger King Corporation v. Rudzewicz, 471 U.S. at 473, n. 15, 105 S.Ct. at 2182, n. 15; Helicopteros, 466 U.S. at 414, 104 S.Ct. at 1872. "It has been said that when a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum, the State is exercising `specific jurisdiction' over the defendant." Id., at n. 8. But when a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum, the State has been said to be exercising "general jurisdiction" over the defendant. Id., at n. 9.

THE ISSUE PRESENTED
The single question presented for our review is whether the Due Process Clause denies Louisiana "general" personal jurisdiction in this case. The plaintiff relies solely on the theory of "general jurisdiction" to support the district court's exercise of personal jurisdiction over the nonresident defendant corporation, Wallem Shipmanagement, Ltd.
Defendant Wallem argues simply that maintenance of the suit would offend due process, implicitly conceding that institution of this action by long-arm service as per La.R.S. 13:3201 was effective if due process has been satisfied. See Superior Supply Co. v. Associated Pipe & Supply Co., 515 So.2d 790 (La.1987); Fryar v. Westside Habilitation Center, 479 So.2d 883 (La.1985); Clay v. Clay, 389 So.2d 31 (La.1979); and Adcock v. Surety Research and Investment Corp., 344 So.2d 969 (La. 1977).

*106 THE TWO-PART DUE PROCESS TEST
The vast majority of the Supreme Court's efforts to define and refine the limits of jurisdictional power have focused on the problem of "specific jurisdiction." This inquiry has evolved into a complex two-part test involving whether the nonresident defendant has established "minimum contacts" with the forum such that maintenance of the suit does not offend "traditional notions of fair play and substantial justice." The plaintiff argues that the court of appeal erred in applying the two-part test in the present case in which only "general" jurisdiction is at issue. Accordingly, an examination of the two-part test as it has developed in specific jurisdiction cases is in order before we determine whether it should be applied in a general jurisdiction case as well.
Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, the requirement of meaningful contacts is satisfied if the defendant has purposefully directed his activities at residents of the forum, Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984), and the litigation results from alleged injuries that arise out of or relate to those activities. Burger King Corp., supra; Helicopteros, supra. By requiring that a defendant must have purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws, the requirement ensures that he will not be haled into a jurisdiction solely as a result of a random, fortuitous or attenuated contact, or by the the unilateral activity of another party or a third person. Asahi Metal Industry Co., supra; Burger King Corp., 471 U.S. at 475, 105 S.Ct. at 2183; Keeton v. Hustler Magazine, supra; World-Wide Volkswagen Corp. v. Woodson, supra. Thus, where the defendant deliberately engaged in significant activities within a state, or has created continuing obligations between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by the benefits and protections of the forum's laws it is presumptively not unreasonable to require the defendant to submit to the burdens of litigation in that forum as well. Burnham v. Superior Court of California, 495 U.S. 604, 110 S.Ct. 2105, 2124-25, 109 L.Ed.2d 631 (1990) (Brennen, J., concurring); Asahi Metal Industry Co., 480 U.S. at 109, 107 S.Ct. at 1030; Burger King Corp., 471 U.S. at 476, 105 S.Ct. at 2184; World-Wide Volkswagen, 444 U.S. at 297, 100 S.Ct. at 567.
Once it has been decided that a defendant purposefully established such minimum contacts within the forum state, a presumption arises that jurisdiction is reasonable and the burden of proof and persuasion shifts to the defendant opposing jurisdiction to present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Burger King Corp., 471 U.S. at 477, 105 S.Ct. at 2185. See also Haisten v. Grass Valley Medical Reimbursement Fund, Inc., 784 F.2d 1392 (9th Cir.1986). Most such considerations usually may be accommodated through means short of finding jurisdiction unconstitutional, such as choice of law rules. Burger King Corp., 471 U.S. at 477, 105 S.Ct. at 2185; Burnham v. Superior Court, 110 S.Ct. at 2125. Nevertheless, minimum requirements inherent in the concept of fair play and substantial justice may defeat the inference of reasonableness of jurisdiction even if the defendant has purposefully engaged in forum activities reflected by sufficient minimum contacts. Asahi Metal Industry Co., 480 U.S. at 113, 107 S.Ct. at 1033; Burger King Corp., 471 U.S. at 478, 105 S.Ct. at 2185; World-Wide Volkswagen, supra. Jurisdictional rules may not be employed in such a way as to make litigation so gravely difficult and inconvenient that a party is unfairly placed at a severe disadvantage in comparison to his opponent. Burger King Corp., 471 U.S. at 478, 105 S.Ct. at 2185.
In attempting to overcome the prima facie case that jurisdiction is reasonable, the defendant may present evidence and argument *107 as to certain considerations that the Supreme Court has indicated are relevant in deciding whether maintenance of a suit comports with traditional notions of fair play and substantial justice. The relationship between the defendant and the forum must be such that it is reasonable to require the defendant to defend the particular suit which is brought there. International Shoe Co., 326 U.S. at 317, 66 S.Ct. at 158. Implicit in this emphasis on reasonableness is the understanding that the burden on the defendant, while always a primary concern, will in an appropriate case be considered in light of other relevant factors, including the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, at least where that interest is not adequately protected by the plaintiff's power to choose the forum, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies. Asahi Metal Industry Co., 480 U.S. at 113, 107 S.Ct. at 1033; Burger King Corp., 471 U.S. at 477, 105 S.Ct. at 2184; World-Wide Volkswagen, 444 U.S. at 292, 100 S.Ct. at 564. These considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required. Burger King Corp., 471 U.S. at 477, 105 S.Ct. at 2184; Madara v. Hall, 916 F.2d 1510, 1519 (11th Cir.1990).
In summary, under this two-part test, the burden of showing minimum contacts lies with the party claiming jurisdiction to be proper. Once this burden is met, a presumption of reasonableness of jurisdiction arises. The burden then shifts to the opposing party to prove the assertion of jurisdiction would be so unreasonable in light of traditional notions of fair play and substantial justice as to overcome the presumption of reasonableness created by the defendant's minimum contacts with the forum. See Wright and Miller, Federal Practice and Procedure § 1067, pp. 301-2.
Thus, the dynamics of the two-part analysis resembles placing two different articles in the pans or trays of a set of scales to determine which is heavier. The minimum contacts and the evidence of substantial unfairness or injustice each have independent constitutional weight. The weight of the contacts depends on the nature and intensity of the defendant's ties, contacts or relationships with the forum. The weight of the evidence of unfairness is mainly comprised of the gravity of the inconvenience or burden the defendant would sustain by defending the suit in the forum minus the weight of the interests of the plaintiff and the state in having the suit litigated in the forum. If the weight of the evidence of unfairness is heavier than the weight of the minimum contacts, jurisdiction is defeated; but if the minimum contacts weigh more, jurisdiction is maintained.

THE TWO-PART TEST SHOULD APPLY TO GENERAL JURISDICTION CASES
The Supreme Court has not indicated whether a two-part test similar to the minimum contacts/fair-play factors analysis should be applied in general jurisdiction cases. In fact, the Court has directly addressed the general jurisdiction problem only twice since the adoption of the International Shoe standards. See George, In Search of General Jurisdiction, 64 Tulane L Rev 1097, 1108 (1990):
In Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952), the Court held that Ohio could assert general jurisdiction over a Philippine corporation because of the "continuous and systematic, but limited, part of its general business" activities in the forum, although the cause of action sued on did not arise in Ohio and was unrelated to the business activities of the corporation in that state. The company's Philippine operations had been interrupted by the Japanese occupation of the islands during World War II. The president of the corporation returned to his residence in Ohio to personally supervise steps for rehabilitating the company after the war, including *108 the employment of secretaries, appointment of a bank as transfer agent, maintaining bank accounts, and conducting correspondence. The court held these activities to be sufficiently substantial and of such a nature as to permit Ohio, if it chose, to entertain the suit against the corporation arising out of its non-Ohio activities.
More recently, in Helicopteros, supra, the Supreme Court reaffirmed the viability of general jurisdiction but concluded that it could not be asserted because the foreign corporation's contacts with the forum did not amount to continuous and systematic activity. This was a wrongful death action brought in Texas against a Colombian corporation for an accident in Peru involving a crash of the corporation's helicopter. The corporation provided transportation for oil and construction companies in South America. The corporation's contacts with Texas were its chief executive officer's one trip to Texas to negotiate a contract, its purchase of most of its helicopters over a period of years from a Texas firm, its arranging to have prospective pilots and management personnel trained in Texas, and its acceptance of checks paying for its transportation services drawn on a Texas bank for payment into a New York account. The Supreme Court dismissed these contacts as either sporadic or of negligible significance and concluded that as a whole they did not constitute continuous and systematic activities with Texas.
It may be inferred from the decisions that a foreign corporation's continuous and systematic activities in a state are constitutionally equivalent at least to the purposeful establishment of minimum contacts with the forum. Further, it is evident that the conducting of business regularly out of a corporate office in the forum state is considered as an extremely substantial step toward creating jurisdiction:
"... territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there." Burger King Corp., 471 U.S. at 476, 105 S.Ct. at 2184.
The Court in World-Wide Volkswagen Corp. v. Woodson, supra, recognized that when a corporation purposefully avails itself of the privilege of conducting business activities within the forum state that:
"[I]t has clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are too great, severing its connection with the State" 444 U.S. at 297, 100 S.Ct. at 567.
Cf., Asahi Metal Industry Co., supra (one of the factors leaning against jurisdiction was finding that defendant had no office in forum state); Helicopteros, 466 U.S. at 416, 104 S.Ct. at 1873 (No jurisdiction found where "[i]t is undisputed that Helicol does not have a place of business in Texas").
Some courts have resisted application of the two-part test to cases involving general jurisdiction, instead holding that plaintiff's showing of systematic and continuous contacts renders the exercise of jurisdiction fair per se. See e.g., Behagen v. Amateur Basketball Association of U.S.A., 744 F.2d 731 (10th Cir.1984), and Crane v. Carr, 814 F.2d 758 (D.C.Cir.1987). Many other courts have required that an assertion of general jurisdiction pass both prongs of the two-part test. Dalton v. R & W Marine, Inc., 897 F.2d 1359 (5th Cir.1990); Donatelli v. National Hockey League, 893 F.2d 459 (1st Cir.1990); Bearry v. Beech Aircraft Corp., 818 F.2d 370 (5th Cir.1987); Williams Electric Co., Inc. v. Honeywell, Inc., 854 F.2d 389 (11th Cir.1988); Holt Oil & Gas Corp. v. Harvey, 801 F.2d 773 (5th Cir.1986); Abuan v. General Electric Co., 735 F.Supp. 1479 (D.Guam 1990); Kervin v. Red River Ski Area, Inc., 711 F.Supp. 1383 (E.D.Tex.1989); Simmons v. SeaTide International, Inc., 693 F.Supp. 510 (E.D.La.1988); Palmer v. Kawaguchi Iron Works, Ltd., 644 F.Supp. 327 (N.D.Ill.1986). The Supreme Court did not expressly apply fairness considerations in either of its general jurisdiction cases but this fact is not truly significant. Perkins v. Benguet Consolidated Mining Co., supra, was decided long before the Court's recent attempts to more fully articulate and channel the fairness *109 considerations. The Helicopteros court concluded that the plaintiffs had failed to meet their initial burden of showing that the defendant's forum contacts were continuous and systematic; therefore, the Court did not reach the stage of the case in which a fairness analysis otherwise might have been called for.
In our opinion, a state's assertion of general jurisdiction over an unconsenting defendant ought to be measured by a test similar to that for specific jurisdiction elaborated upon in Asahi Metal Industry Co., supra, and Burger King Corp., supra. The Court in International Shoe Co. v. Washington, supra, linked traditional notions of fair play and substantial justice with minimal contacts as joint standards for determining whether maintenance of a particular suit based on personal jurisdiction comports with due process. It is clear that the Supreme Court sought to adopt criteria that would tend to be mutually definitive, yet not be "simply mechanical or quantitative" 326 U.S. at 319, 66 S.Ct. at 159. See also Schaffer v. Heitner, 433 U.S. 186, 203-4, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977). To apply one criterion without the leaven of considerations implied by the other would tend to defeat both purposes. In fact, the Court has not done so, but has from time to time stressed and expounded upon both ideas in the course of developing the International Shoe doctrine. We are unaware of any reason to suppose that the vivifying and corrective influences of the "traditional notions of fair play and substantial justice" are automatically incorporated in the "continuous and systematic activities" test any more than they are in the "minimum contacts" test. While the distinction between "general" and "specific" jurisdiction provides a useful analytic device, the use of these categories does not eliminate the need to evaluate each assertion of personal jurisdiction in light of traditional notions of fair play and substantial justice. Cf., Holt Oil & Gas Corp. v. Harvey, supra. For all of these reasons, we conclude that, while adjustments and modifications may be necessary, as in any instance in which precepts developed for one type of case are applied by analogy to a similar category, the two-part minimum contacts/fairness analysis which evolved in specific jurisdiction cases should also be applied to evaluate the assertion of general jurisdiction in the present case.

APPLICATION OF TWO-PART TEST TO THIS CASE

A. Minimum Contacts under General Jurisdiction
The record clearly reflects that defendant Wallem established a corporate office in Louisiana and continuously and systematically conducted a regular part of its ship management business therefrom. Consequently, Wallem purposefully established minimum contacts with the forum, availed itself of the benefits and protections of the state's laws and had clear notice that it was subject to suit in Louisiana. See Burger King Corp., 471 U.S. at 476, 105 S.Ct. at 2184; World-Wide Volkswagen, 444 U.S. at 297, 100 S.Ct. at 567.
The trial court did not conduct a contradictory evidentiary hearing on the exception to jurisdiction. The record was comprised of pleadings, memoranda, and discovery depositions taken in this matter. If there had been a contradictory evidentiary hearing, plaintiff would have had to prove facts in support of her showing that jurisdiction was proper by a preponderance of the evidence. However, under constitutional and codal principles, when the trial court decides the jurisdictional issue without a contradictory evidentiary hearing, as it has done in the present case, the burden of the non-moving party is relatively slight and allegations of the complaint and all reasonable inferences from the record are to be drawn in favor of the non-moving party. La.C.C.P. art. 925, 930. See also American Greetings Corp. v. Cohn, 839 F.2d 1164 (6th Cir.1988); Poston v. American President Lines, Ltd., 452 F.Supp. 568 (S.D.Fla.1978).
As the court of appeal concluded, Wallem's relations with Louisiana were continuous and systematic business ties establishing minimum contacts for purposes of *110 in personam jurisdiction under the International Shoe doctrine. 568 So.2d at 131. The trial court evidently reached the same conclusion in overruling the declinatory exception, although it did not assign written reasons.
The major points of the court of appeal reasoning were: (1) The contacts between Wallem and the forum in the present case are more like those in Perkins than in Helicopteros; (2) Wallem established and operated a corporate office in Louisiana; (3) In order to meet crewing needs for the M/V BRASSIE, Wallem had systematic contact with MMC, a New Orleans company that acted as its crewing agent; (4) Decedent Reyes was hired through MMC and, therefore, his employment by Wallem stems directly from Wallem's activity in the forum; (5) Wallem purposefully availed itself of business contacts and relationships with Louisiana and the benefits derived therefrom; and (6) Wallem's activities in Louisiana were of a continuous and systematic nature, sufficient for general jurisdiction to attach. 568 So.2d at 130. On rehearing, the court of appeal limited itself to consideration of the fairness factors and did not alter its initial findings or conclusions with respect to Wallem's purposeful, meaningful contacts with the forum state.
Although we agree substantially with the court of appeal on the minimum contacts issue, its opinion fails to mention or to properly emphasize several important facts. When these are given adequate emphasis, the weight accorded the presumption that jurisdiction is reasonable is even greater than that suggested by the appellate court's reasons.
1. Establishment of Wallem's New Orleans Office. Wallem maintained its New Orleans corporate office from which it conducted continuous and systematic operations for five, rather than two, years. The court of appeal found that the New Orleans office had been maintained for only two years. However, the court of appeal's opinion failed to take into account the testimony contained in the deposition of Kelvin Troughton of MMC that Wallem's New Orleans office was maintained for at least five years. For purposes of the exception to jurisdiction, this conflict in the record should be resolved in favor of plaintiff, the non-moving party. American Greetings Corp. v. Cohn, 839 F.2d 1164 (6th Cir. 1988).
2. Management and Support Services. The officers and employees assigned to Wallem's New Orleans office performed substantial, often crucially important, ship management services, and not merely "technical" or minor functions. Defendant Wallem and the court of appeal characterized these activities as "technical." However, this term tends to minimize the actual substantive support activities involved in the New Orleans office's hemispherical responsibilities. Under its contract of management with its client ship owners, Wallem was to provide support and management services including such wide ranging activities as defending claims against the ship owner, maintaining and repairing the vessels, supplying the ship's stores, arranging insurance, and arranging for the proper care of cargo. While purely administrative matters for the world-wide fleet were handled out of its primary office in Hong Kong, substantial field support from the various regional offices, including the New Orleans office, specifically involved travelling to vessels to examine them for any problems they might be encountering including damages or defects in machinery, evaluation of the maintenance programs, making recommendations to the ship owner on management of the vessel, systems analysis of equipment and personnel, and providing crews.
3. The Superintendents. Wallem's superintendents were highly qualified experts in all phases of ship management; their onsite personal attention to the problems of vessels and personnel was essential to Wallem's global operations. The court of appeal found that the office was staffed with four employees of the company, two of whom were management level employees (referred to as "superintendents") responsible for implementing instructions from the Hong Kong office. Once again, however, the label is misleading and minimizing. The record reflects that these "superintendents" *111 physically travelled from their base in New Orleans to Wallem-managed vessels navigating in the western hemisphere to inspect vessels for the need for maintenance or repairs. At least one of these two superintendents, Mr. Arun Tewari, was an engineer who arranged with MMC to crew various vessels, including the M/V BRASSIE. Kelvin Troughton, president and general manager of Marine Consulting and Management, Ltd., testified that Mr. Tewari's "main activity was attending to repairs and maintenance of Wallem ships whenever they visited U.S. ports", as well as other duties described above. Further, Patrick Taylor, Wallem's chief executive officer, was at one time a "superintendent" and before that he was a ship's master for six years.
For all these reasons, we conclude that plaintiff has carried her burden of proving continuous and systematic contacts between Wallem Shipmanagement and the forum state. Accordingly, because the aggregate of these contacts establishes a threshold for a general jurisdiction case that is higher and more substantial than that required in a specific jurisdiction case, see Wright & Miller, Federal Practice and Procedure § 1067, it stands to reason that the weight of the presumption that jurisdiction is reasonable is heavier here than it would be in a specific jurisdiction case based on a single or only a few purposeful contacts.

B. Fairness
Plaintiff having demonstrated that Wallem purposefully established minimum contacts with the forum, a presumption arose that the district court's personal jurisdiction over the corporation is reasonable. The burden of production of evidence and persuasion shifted to Wallem to prove that the jurisdiction is so unreasonable as to overcome the weight of the presumption. After weighing the actual evidence produced by Wallem, as opposed to its mere assertions, we conclude that the corporation failed to defeat the presumption for several reasons. Wallem failed to show that defense of the suit in the forum would be so gravely difficult and inconvenient as to place it at a severe disadvantage in comparison with its opponent. Accordingly, the potential inconvenience or burden Wallem could sustain defending the suit in this forum is so slight that it fails to rise to a constitutional level. Consequently, it cannot be said that Wallem's showing of unfairness is sufficient to overcome the very weighty presumption of jurisdictional reasonableness created by the defendant's purposeful, continuous and systematic contacts with the forum.
The defendant relied mainly on conclusory assertions and presented very little convincing evidence that would tend to overcome the substantial prima facie case or presumption established by the plaintiff's minimal contacts showing. Consequently, the record fully supports the district court's conclusion that the assertion of personal jurisdiction over Wallem in Louisiana did not offend due process. We believe the court of appeal erred by reversing the district court's ruling because it failed to heed carefully the complexities of the Supreme Court's opinions regarding the two-step minimal contacts/fairness procedures. First, the appellate court overlooked the fact that the burden of proof was shifted to the defendant to show that the assertion of jurisdiction was unreasonable and that the defendant was required to discharge this burden by the introduction of persuasive evidence, rather than mere conclusory assertions. Second, the court of appeal misapplied the fairness factors and failed to consider all of the pertinent evidence and inferences that may be drawn in favor of the plaintiff.
In its first full articulation of the "fair play" factors, the Supreme Court carefully portrayed the dynamic relationships between them:
"[T]he burden on the defendant, while always a primary concern, will in an appropriate case be considered in light of other relevant factors, including the forum State's interest in adjudicating the dispute ...; the plaintiff's interest in obtaining convenient and effective relief...; the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared *112 interest of the several States in furthering fundamental substantive social policies...." World-Wide Volkswagen, 444 U.S. at 292, 100 S.Ct. at 564 (citations omitted).
Accordingly, the defendant's burden and inconvenience, if great enough to rise to a constitutional dimension, usually is the heaviest weight that may be brought to bear against the strength of the plaintiff's prima facie case. Before the defendant's burden may be used to defeat the plaintiff's showing of jurisdictional reasonableness, however, it may be counterbalanced and even totally offset by the strength of the interests of the plaintiff and the state in having the suit adjudicated in the forum. The other factors may be used either to bolster or to diminish the defendant's showing of burden or inconvenience depending on the circumstances of each case. Consequently, it is clearly erroneous to conclude "that all of the factors ... militate against" personal jurisdiction, as the court of appeal did in the present case. 568 So.2d at 132.
In fact, we believe that when the two-part test is properly applied in the present case, the strength of the plaintiff's prima facie case, based on the defendant's corporate office and purposeful, continuous and systematic contacts, is so great that it clearly outweighs the inconvenience or burden of defending the suit in the forum as shown by the record evidence, even before the weights of any countervailing factors such as the plaintiff's interest and the state's interest are subtracted from the weight of the burden of defense in the forum. This results from the fact that the defendant's burden as shown herein is very slight and may not rise to constitutional proportions. Moreover, when the other factors are properly weighed with the defendant's burden, they do not all militate against jurisdiction but tend to offset one another, thereby leaving the prima facie case of jurisdictional reasonableness relatively unscathed and undefeated.
Wallem contended that it would be under a "severe burden" if required to defend the suit in Louisiana. But it did not introduce any concrete evidence to show how the litigation would be "gravely difficult and inconvenient" or place it at a "`severe disadvantage' in comparison to [its] opponent." Burger King Corp., 471 U.S. at 478, 105 S.Ct. at 2185. In the present case, the mere fact that defendant's principal corporate office is located a great distance from the forum does not necessarily establish that it will suffer a hardship or inconvenience rising to the level of a denial of due process; indeed, for a global ship management enterprise such as Wallem accustomed to constantly handling a multitude of transactions of great magnitude and variety thousands of miles from its principal office, it should not be any more inconvenient to defend this lawsuit in New Orleans, than in Honduras, Hong Kong or any other nation where its vessels may call. In fact, under its contract of management with its client shipowners, Wallem voluntarily assumed an affirmative duty to defend all claims against the vessels thus requiring it to defend lawsuits in any port in any nation of the world where a vessel managed by Wallem may be subject to arrest or attachment.
Unlike Asahi, Wallem was not merely the manufacturer of a product placed in the stream of commerce without purposeful direction toward the forum state. Wallem purposefully conducted a global ship management business requiring it to maintain constant communications with 60 to 100 vessels dispersed world-wide and populated by officers and crews of many nationalities and languages. The M/V BRASSIE, for example, was manned by a crew from Honduras under the command of Northern European officers. In order to tend to the continually recurring needs of the vessels, officers and crews, under its charge, Wallem purposefully directed personnel, maintenance, repair and supply activities all over the world on a daily or even hourly basis. In order to handle matters on site that could not be directed electronically from its principal office, Wallem purposefully established a corporate office in New Orleans from which it continuously and systematically conducted a vital part of its regular business. This office was headed *113 by two "superintendents" who were apparently highly trained engineers or former ships' masters whose duties it was to meet all Wallem vessels requiring such attention in the western hemisphere. Although the record is silent as to which Wallem employees, if any, investigated the accident involved in this case or assisted in the removal of Reyes' body, such activities would appear to fall within the superintendents' normal responsibilities. The evidence reflects that records were kept of Wallem's western hemispheric activities in the New Orleans office, although they were supposed to be destroyed or sent to the principal office periodically. There is no evidence that any grave difficulty or inconvenience would be involved in producing the pertinent surviving records for a trial in this forum. By the same token, there was no showing that production of witnesses in this forum would be any less convenient than in other fora. The record does not establish the identity or location of the witnesses who will be required in the trial of this case, and of course it would be impossible to predict where the BRASSIE will be located at that time. Consequently, potential witnesses may then be located in Honduras, Northern Europe, in Wallem's western hemisphere office, or on board the BRASSIE. Moreover, it does not appear at all likely that any witnesses will be located in Hong Kong at the time of the trial.
Further, modern transportation and communications have made it less burdensome to defend suits brought in a State where a defendant engages in continuous and systematic business activities. When those transportation and communication forms are utilized to conduct business within the forum, it hardly seems unfair to require the enterprises benefitting from them to use those same means to defend litigation in the forum. We note that air travel on international and domestic flights has increased threefold since the decision in International Shoe Co., supra; and telecopiers, telephones, and computers place clients and attorneys minutes from each other any where in the world. That the defendant has already travelled to New Orleans for the purpose of setting up an office here is an indication that suit in the forum likely would not be prohibitively inconvenient. Burnham v. Superior Court, 110 S.Ct. at 2125 (Brennan, J. concurring). As noted by the Court in Burger King Corp., supra, "[T]he Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed." 471 U.S. at 474, 105 S.Ct. at 2183.
Under these circumstances, we believe that Wallem has failed to show that defense of the suit in the forum state will cause it inconvenience of a constitutional nature or place it at a severe disadvantage in comparison to its opponent.
Additionally, the interests of the State and the plaintiff adequately counterbalance any slight inconvenience that the defendant may experience in defending the suit in this forum. The State has an interest because of the significant benefits which it has provided the defendant while it has been doing business here. Wallem installed a major semi-global corporate office in this state from which it conducted continuous and systematic operations. Wallem has purposefully availed itself through its officers and agents of the State's police, fire and emergency medical services; travel on the State's roads and waterways; and the protections and benefits of the State's laws and the right of access to its courts. Additionally, the State has vital economic and social interests in the administration of the general maritime law and Jones Act because of the high volume of maritime traffic through Louisiana's ports, and the large number of Louisiana residents and businesses involved in the maritime and offshore industries.
The plaintiff has a strong interest in obtaining effective relief in this forum. Foreign personal injury victims are usually attracted to American courts because of procedural and evidentiary advantages involved in the judicial process. Often, substantive law and jury verdicts may be more favorable to personal injury litigants as well, though choice of law principles and the existence of additur and remittitur procedural devices minimize this advantage. *114 These advantages however inherently reflect a strong interest in the plaintiff's choice of forum which is magnified by the fact that defendants in such transnational cases usually vigorously resist being sued here, even when the defendant is an American, or is beneficially owned by an American corporation or citizen. See Robertson & Speck, Access to State Courts in Transnational Personal Injury Cases, 68 Tex L Rev. 937 (1990).
Plaintiff also alleges that Louisiana is the only forum in the western hemisphere in which a court would have personal jurisdiction over the defendant in this case. Furthermore, "only an outright dismissal with prejudice could be more `outcome-determinative' than a ... dismissal to a distant forum in a foreign land." In re Air Crash Disaster near New Orleans, 821 F.2d 1147, 1156 (5th Cir.1987), vacated sub nom. Pan Am. World Airways, Inc. v. Lopez, 490 U.S. 1032, 109 S.Ct. 1928, 104 L.Ed.2d 400, aff'd in part and vacated in part, 883 F.2d 17 (5th Cir.1989). One reason in particular this is true is that the statute of limitation may have run in other potential fora. Cf., Madara v. Hall, 916 F.2d at 1519.
Wallem argues that plaintiff can bring an action against it in Honduras because "it is a matter of published law that the courts of Honduras provide an available forum for injured Honduran seamen and their survivors. See Banegas v. United Brands Co., 663 F.Supp. 198 (D.S.C.1986)" However, the holding in that case is inapposite here and actually much narrower than the proposition asserted by Wallem. Banegas involved a suit by a Honduran seaman against his employer, a Honduran corporation, asserting a Jones Act claim arising out of his injury aboard a Honduran-flag cargo vessel. The court granted the employer's motion to dismiss for lack of subject matter jurisdiction. After considering eight factors necessary to a choice of law determination, the court concluded that most of the factors pointed to the application of foreign law. One of the factors that the court found counted against the use of domestic law was that there was a foreign forum available to the plaintiff. The court based its finding in this regard on affidavits and other evidence presented by the defendant showing that the plaintiff had already been paid benefits under Honduran law.
In the present case, the question is not whether foreign law should apply but whether the Due Process Clause prevents a State from asserting personal jurisdiction over a defendant corporation doing business and conducting continuous and systematic operations from a corporate office within its borders. Therefore, the factors to be considered in the present case, as well as the procedures, burdens of proof and presumptions to be applied, are considerably different from those applicable in Banegas. Furthermore, insofar as the record discloses, in the present case the plaintiff has not received and has no proven entitlement to any definite benefits under foreign law. Consequently, the Banegas decision is neither controlling nor persuasive with respect to the constitutional issues of due process and personal jurisdiction confronting this court.
Belatedly, Wallem seeks to determine the outcome of the litigation here by conceding in brief that the Honduran courts would have jurisdiction of this claim. However, the general rule is that the personal jurisdiction of a court over a party is determined as of the time of the filing of the suit. Asarco, Inc. v. Glenara, Ltd., 912 F.2d 784 (5th Cir.1990). Further, Wallem has failed to demonstrate that such an assertion by counsel in brief here would have any legal effect in the foreign forum. For these reasons, Wallem's recent willingness to concede that a Honduran court may have jurisdiction of the claim is not entitled to any significant weight in determining whether the Due Process clause of the Fourteenth Amendment denies Louisiana courts personal jurisdiction in this case.
Finally, the interests of every other jurisdiction having a possible involvement in this case appears to be very slight. The decedent was a resident of Honduras serving as a seaman aboard a vessel owned by a Panamanian company managed by a *115 Hong Kong corporation. The accident occurred on the high seas near the coast of Oregon, and the decedent's body was taken to that state after his fatal accident. The company managing the vessel had a western hemisphere corporate office in New Orleans from which it performed ship management functions required by the needs of its vessels, officers and crews operating in the western hemisphere. Since the controversy implicates the concerns of multiple nations, no one nation can be said decisively to have the only interest in this matter. Accordingly this factor should not be accorded great weight. See Grimandi v. Beech Aircraft Corp., 512 F.Supp. 764, 780 (D.Kansas 1981).

CONCLUSION
For the foregoing reasons, we conclude that the assertion of personal jurisdiction over Wallem Shipmanagement, Ltd. in this case does not offend due process. Accordingly, the judgment of the court of appeal is reversed and the case is remanded to the district court for further proceedings.
REVERSED AND REMANDED.
LEMMON, J., concurs.
COLE, J., respectfully dissents.
HALL, J., dissents and assigns reasons.
HALL, Justice, dissenting.
I respectfully dissent.
We granted writs in this case to review whether a Louisiana court has personal jurisdiction over a Hong Kong corporation in a Jones Act and general maritime law action brought by the widow and personal representative of a Honduran seaman who died on the high seas while working on a Panamanian ship managed by the Hong Kong corporation. Believing that the assertion of jurisdiction would not be fair and reasonable under the due process clause of the federal constitution, I would affirm the judgment of the appellate court sustaining an exception of lack of jurisdiction and dismissing plaintiff's suit against the Hong Kong corporation.
Under the Louisiana Long Arm Statute, LSA-R.S. 13:3201, personal jurisdiction can be asserted to the full extent allowed by due process. Superior Supply v. Associated Pipe & Supply Company, 515 So.2d 790 (La.1987); Petroleum Helicopters, Inc. v. Avco Corp., 513 So.2d 1188 (La.1987). The due process clause limits a state court's power to assert personal jurisdiction over nonresident defendants to situations in which they engage in "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).
The threshold inquiry in determining if the exercise of personal jurisdiction comports with due process is whether the defendant purposefully established "minimum contacts" with the forum state. Asahi Metal Industry Co. v. Superior Court, supra; Burger King Corporation v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); International Shoe Co. v. Washington, supra; Superior Supply Company v. Associated Pipe & Supply Company, supra. In order to satisfy the "minimum contacts" standard, the defendant's conduct in connection with the forum state must be such that it would "reasonably anticipate being haled into court there." World-Wide Volkswagon Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).
The jurisdictional analysis has been further refined to vary with the nature of the underlying litigation. When a cause of action arises out of a defendant's purposeful contacts with the forum, minimum contacts are found to exist and the court may exercise its "specific" jurisdiction. Specific jurisdiction can be supported by a single act directed toward the forum. However, when the cause of action does not arise out of the defendant's purposeful contacts with the forum, due process requires that the defendant have engaged in "continuous and systematic contacts" to support the exercise of "general" jurisdiction. Contacts of a more extensive quality and nature are required for the assertion of general *116 jurisdiction. Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952); Dalton v. R & W Marine, Inc., 897 F.2d 1359 (5th Cir.1990).
However, an analysis of the defendant's contacts with the forum is not the end of the inquiry. Additionally, whether the assertion of jurisdiction would comport with "fair play and substantial justice" must be examined. Asahi, supra; International Shoe, supra. This test is one of reasonableness, that is, whether it is reasonable and just in light of the nature and quality of the contacts and all other relevant factors to require the defendant to defend itself in the forum state. Factors to be considered in the reasonableness inquiry include: (1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the interstate [international] judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states [or other nations] in furthering fundamental substantive social policies. Asahi, supra; Burger King, supra; World-Wide Volkswagon, supra.
It is clear that defendant purposely established contacts with the State of Louisiana in this case. Defendant maintained its only office in this hemisphere in New Orleans at the time of the accident. The presence of the office in New Orleans allowed the defendant to service its vessels near the North and South American continents. In order to operate the office, a bank account was maintained in a New Orleans bank.
Also, defendant contracted with a New Orleans company, MMC, to accomplish the crewing of the Brassie. The owner of the Brassie had requested a Honduran crew and MMC was usually contacted when Hondurans were needed.
These acts were purposefully directed towards Louisiana. Defendant consciously chose New Orleans for its field office because of its central location in this hemisphere. The contract with MMC was formed because of its ability to provide a Honduran crew.
Plaintiff contends that these contacts sufficiently satisfy due process and the court can exercise its specific jurisdiction because the cause of action arose out of defendant's connection with this forum. Specifically, it is argued, the deceased was hired because of the contractual relationship between Wallem and the Louisiana crewing agent. However, this action arose out of an accident on the high seas and did not arise out of or relate to the defendant's activities in this state. Defendant's New Orleans office had nothing to do with the decedent's employment or the operation of the Brassie on this voyage. Wallem's relationship with MMC in Louisiana and MMC's role in the employment of the decedent are only remotely connected with his subsequent death and do not form part of the operative facts giving rise to the cause of action. Decedent was employed in Honduras, not Louisiana. The vessel on which he served never entered Louisiana and the accident occurred on the high seas. Thus, this is not a specific jurisdiction case.
Even though the action did not arise from the defendant's activity in Louisiana, the defendant's contact with this state was not an isolated event. The operation of a field office in this state combined with the contract with MMC to supply crew members for vessels were contacts of a systematic and continuous nature which arguably satisfied "minimum contacts" under general jurisdiction. Still, the nature and quality of the contacts must be considered in relation to other relevant factors to determine whether or not the exercise of personal jurisdiction over the defendant in this case would be fair and reasonable as required by due process.
The burden on the defendant in this case would be great. Defendant would be forced to traverse the Pacific Ocean from its headquarters in Hong Kong in order to defend a suit in a foreign tribunal against a plaintiff not associated with the forum. None of the witnesses to this accident on the high seas are Louisiana residents. The *117 deceased was a Honduran resident, and so is his widow who brings this action. There is no evidence that the deceased or his widow ever came to Louisiana, and the employment contract was perfected in Honduras.
The fact that the plaintiff is not a Louisiana resident diminishes Louisiana's interest in the claim and the plaintiff's interest in this forum. The death in this case occurred on the high seas as the Brassie was en route to Vancouver, British Columbia. Although a Louisiana company was involved in crewing the Brassie, the decedent was not employed in Louisiana and this action does not arise out of or relate to Wallem's relationship with the Louisiana crewing agent. The limited activity of the small office in New Orleans which provided service to Wallem's vessels and the contractual relationship with the Louisiana crewing agent does not provide Louisiana with a substantial interest in this maritime suit. Louisiana's interest in the limited business activities carried on by defendant's Louisiana office does not translate into an interest in litigation unrelated to respondent's Louisiana activities.
Plaintiff has selected Louisiana as a forum so it can be presumed that plaintiff has an interest and sees benefits in proceeding in Louisiana. However, the benefits are not persuasively articulated. In brief, plaintiff contends Louisiana is the one place in this hemisphere where Wallem is amenable to suit and that denial of access to the courts here is a permanent denial of a means of redress, but this argument is not supported by authority. It is not shown that Honduras, the country of plaintiff's and decedent's residence and place of employment, would not be an available forum where redress is available. See Banegas v. United Brands Co., 663 F.Supp. 198 (D.S.C.1986). Thus, plaintiff's interest in the forum does not appear to be great.
Asahi instructs that the procedural and substantive policies of other nations be considered before a state exercises jurisdiction. Asahi, 480 U.S. at 115, 107 S.Ct. at 1034. "Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." Asahi, 480 U.S. 102, 115, 107 S.Ct. 1026, 1034. As the court noted in the Asahi case, the foreign interest as well as this country's interest will be best served by a careful inquiry into the reasonableness of the assertion of jurisdiction in the particular case, and an unwillingness to find the serious burdens on a foreign defendant outweighed by minimal interests on the part of the plaintiff or forum state.
The final Asahi factor considered is the shared interest of the several nations in furthering fundamental substantive social policies. Of course, Louisiana is concerned that those injured through the fault of others be given a forum to address those claims. Furthermore, Louisiana has a long relationship with the maritime industry and Louisiana courts are experienced and interested in handling claims related to the industry. Notwithstanding the admiralty setting, however, the exercise of jurisdiction is measured against the due process standard. Bayou Steel Corp. v. M/V Amstelvoorn, 809 F.2d 1147 (5th Cir.1987); Simmons v. SeaTide International, Inc., 693 F.Supp. 510 (E.D.La.1988). The interest in this particular claim is what we must consider. Other nations likewise have an interest in seeing that their residents have redress for injuries and in seeing that actions against their corporations are tried in appropriate forums.
Plaintiff argues that this case is akin to Perkins v. Benguet Consolidated Mining Co., supra, where general jurisdiction was asserted over a foreign corporation in Ohio. Because of the Japanese occupation of the Philippines, the president and general manager of a Philippine mining corporation was forced to close the company's Philippine office and he maintained an office in Ohio. The president kept company files and held directors meetings in the office, paid salaries with checks drawn on Ohio banks, contracted with an Ohio bank to act as a transfer agent, supervised policies dealing with rehabilitation of Philippine property, and used the Ohio office as the address for correspondence relating to the business. In summary, the Philippine corporation, *118 through its president, was conducting its general business in Ohio. The Supreme Court, finding that a continuous and systematic supervision of the corporation's general business was carried on in Ohio, held that federal due process did not prohibit Ohio from exercising jurisdiction over the corporation.
Here, defendant continuously and systematically operated an office in New Orleans between the years 1984 and 1986. This was defendant's only office on this continent. However, defendant's contacts, that is, the nature and extent of defendant's business operations, with Louisiana were not as broad and significant as the defendant's contact was with Ohio in Perkins.
The defendant in the instant case strategically stationed four employees in New Orleans to carry out service on its vessels which sailed near the North and South American continents. The employees received instructions from the Hong Kong office. The New Orleans office had no authority to act for the corporation and thus, was not carrying on the corporation's general business.
In the only other United States Supreme Court decision involving general jurisdiction, Helicopteros Nacionales de Colombia v. Hall, supra, the court held that the Texas state court had no personal jurisdiction over the foreign defendant in a suit by foreign plaintiffs in spite of extensive physical contacts by the defendant with the state through contractual arrangements.
In this case, we have company employees present in the state and a contractual relationship with a Louisiana company. Yet, the defendant's contacts in this case did not give rise to the litigation. This factor is paramount in determining if the defendant could reasonably anticipate being sued in Louisiana on causes of action unrelated to the Louisiana activity.
The balancing of interests in this case is indeed troublesome and difficult. However, after careful consideration, I would conclude that the exercise of personal jurisdiction over Wallem Shipmanagement Company, Ltd. would not comport with notions of fair play and substantial justice. The assertion of jurisdiction would be unreasonable because (1) the accident did not occur in Louisiana nor are any of the parties residents of this state; (2) although defendant had continuous and systematic business contacts with this state, the business activities were limited and not of a general business nature; (3) the cause of action did not arise out of defendant's contacts with this state; (4) the burden on the defendant to defend this case in a foreign tribunal is great; (5) Louisiana does not have a strong interest in this litigation; (6) the plaintiff's interest in this forum is slight; and (7) other nations have a greater interest in the parties and the litigation. Therefore, the burden on the defendant is not outweighed by other considerations in the reasonableness test.
The judgment of the court of appeal dismissing the action against Wallem Shipmanagement, Ltd. for lack of personal jurisdiction should be affirmed.