657 So.2d 124 (1995)
Joseph Teurling HUNT, et al., Plaintiffs-Appellees,
v.
SCHULT HOMES CORPORATION, et al., Defendants-Appellants.
No. 94-1592.
Court of Appeal of Louisiana, Third Circuit.
May 3, 1995.
*125 Elwood C. Stevens, Jr., Morgan City, for Joseph Teurling Hunt, et al.
Samuel E. Masur, Lafayette, Teanna W. Neskora, New Orleans, for Schult Homes Corp., et al.
Triwood Laminating Corp., pro se.
Vance A. Gibbs, Linda G. Rodrigue, Baton Rouge, for Georgia-Pacific Corp.
Jeffrey A. Rhoades, Lafayette, for Royer Mobile Homes of Opelousas, Inc.
Before DECUIR, AMY and SULLIVAN, JJ.
SULLIVAN, Judge.
Defendant/third-party plaintiff, Schult Homes Corporation, appeals the trial court's judgment rendered in favor of third-party defendant, Triwood Laminating Company, sustaining Triwood's declinatory exception of lack of personal jurisdiction. The sole issue before this court is whether the assertion of personal jurisdiction by Louisiana over Triwood meets the requirements of due process. Finding that it does not, we affirm.

FACTS
This suit was instituted by Joseph and Joan Hunt, individually and on behalf of their three minor children, against Royer Mobile Homes of Opelousas, Incorporated and Schult Homes Corporation. In their original petition, plaintiffs alleged that their mobile home, which was built by Schult in Texas and purchased by the Hunts from Royer, contained redhibitory defects justifying rescission of the sale and return of the purchase price. Additionally, plaintiffs alleged that certain components of the mobile home contained formaldehyde which caused them to suffer respiratory ailments, allergic reactions and other health problems.
Schult filed a third-party demand against Georgia-Pacific Corporation and Triwood for indemnity and, in the alternative, contribution in the event Schult was held liable for plaintiffs' injuries. After receiving service of the third-party demand and several of the previously filed pleadings pursuant to Louisiana's Long Arm Statute (La.R.S. 13:3204), Triwood filed an exception of lack of personal jurisdiction. Therein, Triwood asserted that, as a Texas corporation, it lacked sufficient contacts with Louisiana to support the exercise of personal jurisdiction. Triwood attached to the exception the affidavit of Harold Helmbrecht, its president. Helmbrecht represented that Triwood is not licensed and has never been licensed to do business in Louisiana. He also stated that Triwood has never had employees, representatives, agents for service of process, property, offices, bank accounts, loans or assets of any kind in Louisiana. Additionally, no Triwood officers, directors or shareholders reside in Louisiana. Helmbrecht also stated that Triwood never contracted with a distributor to market its products in Louisiana or advertised in Louisiana. Finally, Helmbrecht asserted that "the products sold by Triwood to Skyline Corporation in Bossier City were paper on sheetrock, not the wood products alleged to have been sold to Schult Homes."
Schult opposed Triwood's exception by filing a memorandum in opposition thereto. In support of its opposition, Schult filed the affidavit of Michael Barker, the manager of its Navasota, Texas manufacturing facility. *126 In his affidavit, Barker stated that Schult is a national manufacturer of homes with ten (10) manufacturing facilities in seven (7) states which distributes its homes in forty-two (42) states. Furthermore, Barker represented that the homes manufactured at the Navasota, Texas facility are distributed exclusively in Louisiana, Texas and Arkansas. The mobile home at issue was completed there on April 24, 1989 and delivered to Royer in Opelousas, Louisiana. Barker also stated as follows:
That during the period of time when the Schult home at issue in this case was being manufactured, Triwood Laminating Corporation ("Triwood") was the provider of the ½" particle board facestock, the ½" particle board stiles and luan paneling used by the Navasota, Texas manufacturing facility.
That the Schult home at issue in this case contains ½" particle board facestock, ½" particle board stiles and luan panels that were supplied to Schult by Triwood.
That Triwood has been the supplier of the ½" particle board facestock, ½" particle board stiles and luan paneling for the Texas manufacturing facility during the period from 1987 to the summer of 1994.
That the ½" particle board facestock, ½" particle board stiles and luan paneling supplied by Triwood were finished according to the specifications supplied by Schult.
The record indicates that the trial judge signed two separate and substantively consistent judgments sustaining Triwood's exception of lack of personal jurisdiction. The first such judgment reflects that it was rendered on October 3, 1994 and signed on October 4, 1994. The second judgment was signed on October 17, 1994. Both judgments reflect that a hearing on the matter was held on September 30, 1994. A review of the court minutes also reveals that a hearing was held on that date and that the matter was heard, argued by the parties and taken under advisement by the trial judge. However, a transcript of the hearing is not in the appellate record. Without a transcript of the hearing, we must decide this case based solely on the previously mentioned opposing affidavits which constitute the only evidence of record in this proceeding.

OPINION
On appeal, Schult contends that the trial court erred in refusing to assert personal jurisdiction over Triwood. In essence, Schult argues that the present suit is analogous to the case of World-Wide Volkswagen Corporation v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), which established the "stream of commerce" analysis. Schult also relies upon Ruston Gas Turbines, Inc. v. Donaldson Company, Inc., 9 F.3d 415 (5 Cir.1993) and Bean Dredging Corporation v. Dredge Technology Corporation, 744 F.2d 1081 (5 Cir.1984), two United States Fifth Circuit Court of Appeals opinions in which that court applied the "stream of commerce" theory to find that out of state component part suppliers, whose product was placed into larger products by out of state manufacturers, were amenable to personal jurisdiction in the forum state because the component part suppliers placed the component parts in and moved them along a stream of commerce destined for retail sale throughout the United States. In essence, the "stream of commerce" theory holds that a defendant's placing of its product into the stream of commerce with the knowledge that the product will be used in the forum state is enough to constitute minimum contacts. Schult argues that, based on this line of cases, the assertion of personal jurisdiction over Triwood by Louisiana is fair, reasonable and consistent with due process.
On the other hand, Triwood contends that, in order to be amenable to personal jurisdiction in Louisiana, it must do more than merely place its product into the stream of commerce in Texas. Triwood urges that in order for the assertion of personal jurisdiction to comport with due process requirements, its activity must be more purposefully directed at the forum state, Louisiana, than the mere placing of its product in the stream of commerce. In support of its position, Triwood primarily relies on Asahi Metal Industry Co. v. Superior Court of California, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), a plurality opinion in which the concurring justices did not subscribe to the portion of the opinion which sought to require more purposeful *127 activity directed at the forum state than the placing of a product into the stream of commerce. This "stream of commerce plus" theory, as it is labeled by the United States Fifth Circuit Court of Appeals, requires additional conduct by the defendant which is purposefully directed toward the forum state.
Since the 1987 amendment to La.R.S. 13:3201, which added subsection (B) to insure that long-arm jurisdiction extends to the limits allowed by due process, the sole inquiry into personal jurisdiction over a nonresident involves an analysis of the constitutional due process requirements. Superior Supply Co. v. Associated Pipe and Supply Co., 515 So.2d 790 (La.1987). This inquiry involves a two-part test examining whether the nonresident defendant has established "minimum contacts" with the forum such that maintenance of the action does not offend "traditional notions of fair play and substantial justice." deReyes v. Marine Management and Consulting, Ltd., 586 So.2d 103, 106 (La.1991), quoting language originally enunciated in International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).
The burden of proving minimum contacts with the forum is on the party which claims jurisdiction to be proper. The requirement of meaningful minimum contacts is satisfied if the defendant has purposefully directed his activities at the forum and the litigation results from alleged injuries that arise out of or relate to those activities. Once this burden is met, a presumption of reasonableness arises and the burden then shifts to the defendant opposing jurisdiction to overcome the presumption by proving that the assertion of jurisdiction would unreasonably offend traditional notions of fair play and substantial justice. This second phase of the due process analysis requires a consideration of the burden on the defendant, the forum state's interest in adjudication of the case, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interests of the several states in furthering fundamental substantive social policies. This analysis applies whether the court is concerned with a specific jurisdiction case (one arising from or relating to defendant's contact with the forum) or a general jurisdiction case (one in which the act being sued upon is unrelated to defendant's contact with the forum state). deReyes, 586 So.2d at 106-108 and the cases cited therein.
The deReyes court also established an evidentiary rule to the effect that, when the trial court decides a jurisdictional issue without a contradictory evidentiary hearing, the burden of proof is altered in that "the burden on the non-moving party is relatively slight and allegations of the complaint and all reasonable inferences from the record are to be drawn in favor of the non-moving party." Id., at 109. In the case sub judice, however, it is clear from the court minutes and the judgments that the trial court conducted an evidentiary hearing on this matter on September 30, 1994. The fact that the appellant did not designate a transcript of said hearing as part of the appellate record does not necessitate our application of this lessened burden insofar as the non-moving party is concerned.
While the Supreme Court of Louisiana's decision in deReyes contained a thorough review of the United States Supreme Court jurisprudence on personal jurisdiction, it did not discuss the distinction between the "stream of commerce" and "stream of commerce plus" theories as delineated by the United States Fifth Circuit Court of Appeals in Ruston Gas Turbines, Inc. and Bean Dredging Corporation, discussed supra. Most probably, this is because the facts of deReyes did not involve the question of jurisdiction over a product manufacturer. The issue was Louisiana's general jurisdiction over a Hong Kong ship management company in a maritime personal injury case.
Although the United States Fifth Circuit Court of Appeals has specifically adopted the "stream of commerce" analysis of World-Wide Volkswagen Corp. and rejected the "stream of commerce plus" analysis of Asahi Metal Industry Co. (until such time as a majority of United States Supreme Court justices subscribe to that theory), the Louisiana courts of appeal, in defective product cases, have generally required that the defendant's *128 conduct be more purposefully directed at the particular forum than the mere placing of a product into the stream of commerce. Langley v. Oxford Chemicals, Inc., 25596 (La.App. 2 Cir.1994), 634 So.2d 950; Cadawas v. Skibsaksjeselskapet Storli, Bergin, 630 So.2d 289 (La.App. 5 Cir.1993); J. Wilton Jones Co. v. Touche Ross & Co., 556 So.2d 67 (La.App. 4 Cir.1989). In these cases, the courts of appeal have found that Louisiana's assertion of personal jurisdiction over nonresident product suppliers who placed such products into the stream of commerce in other states (or foreign countries), without doing more, to be violative of due process. In each case, the courts of appeal concluded that the nonresident defendant had not taken any purposeful action which resulted in the establishment of significant minimum contacts with Louisiana necessary to satisfy the requirements of constitutional due process.
Even under the broad "stream of commerce" analysis of World-Wide Volkswagen Corp. as interpreted by the United States Fifth Circuit Court of Appeals, foreseeability is still a significant factor. "The foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum state. Rather, it is that the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp., 444 U.S. at 297, 100 S.Ct. at 567. (Emphasis ours.)
Applying the aforestated principles to the facts of the present case, we conclude that Schult failed to prove that Triwood had established sufficient minimum contacts with Louisiana. Triwood's conduct involved selling component parts in Texas to a Texas manufacturer who then sold the finished products in three (3) states. Indisputably, Triwood never had employees, representatives, agents for service of process, property, offices, bank accounts, loans or assets of any kind in Louisiana. Also, it never advertised or marketed its products in this state. No Triwood officers, directors or shareholders reside in Louisiana. Triwood's only direct contact with Louisiana involved the sale of sheetrock to a Bossier City, Louisiana concern from 1989 to 1991. The sale of the particle board and paneling to Schult in this case took place in Texas between a Texas corporation and a Texas manufacturing facility. Schult does not allege in its affidavit that Triwood knew or reasonably should have known that the Schult mobile homes manufactured in Texas were distributed only in Texas, Louisiana and Arkansas. Likewise, Schult does not allege that Triwood knew or reasonably should have foreseen that its particle board and paneling, once incorporated into a Schult mobile home, would cause damages in Louisiana. While it may have been foreseeable that Triwood's products would find their way into the forum state of Louisiana through the stream of commerce, Triwood's conduct in this case and its lack of any significant connection with Louisiana are attenuated to the point that it should not have reasonably anticipated being haled into court here.
Our conclusion does not prejudice plaintiffs' interest in recovering their damages or Louisiana's interest in seeking redress for its injured citizens. This is a third party indemnification and/or contribution action between a Texas corporation and a foreign corporation which is licensed to conduct and does conduct business in Texas. Plaintiffs will be able to litigate their claims against the two primary defendants, Royer and Schult, in a Louisiana court. They did not add Triwood as a direct defendant and did not appeal the trial court judgment dismissing Triwood. If Schult is held liable here, it can then bring its action for indemnity and/or contribution in Texas against Triwood.
For these reasons, the trial court's judgment is affirmed. Costs are assessed to defendant/third-party plaintiff, Schult Homes Corporation.
AFFIRMED.