673 So.2d 1129 (1996)
TEKNIKA ELECTRONICS CORPORATION, Plaintiff-Appellee,
v.
SATELLITE EARTH STATIONS OF LOUISIANA, INC., Defendant-Appellant.
No. W95-663.
Court of Appeal of Louisiana, Third Circuit.
April 17, 1996.
Writ Denied June 28, 1996.
*1131 Kevin Wade Trahan, Claude Rivet, Lafayette, for Teknika Electronics, Inc.
Charles N. Wooten, Lafayette, for Satellite Earth Stations of Louisiana, et al.
Donlon Pugh, Lafayette, for St. Paul Fire & Marine.
Kevin Richard Tully, New Orleans, for Yasuda Fire & Marine Ins. Co.
Before THIBODEAUX, SAUNDERS, DECUIR, AMY and SULLIVAN, JJ.
SAUNDERS, Judge.
The issue before us is whether, consistent with the due process clause of the United States Constitution, a Louisiana court may exercise in personam jurisdiction over a foreign-owned parent company alleged to be an alter ego of its wholly owned subsidiary with respect to the distribution of allegedly defective products in Louisiana.
After balancing the interests and concerns of the competing parties, we conclude that jurisdiction attaches. The parent company had minimum contacts with the State of Louisiana and failed to show that it would be unreasonable for it to be hailed into court in this state.

FACTS AND PROCEDURAL HISTORY
Plaintiff, Teknika Electronics Corporation, originally filed suit on an open account for the sum of $40,640.97, plus legal interest, against defendant, Satellite Earth Stations of Louisiana, Inc. (SES/LA), in the Thirteenth Judicial District Court, Evangeline Parish, Louisiana. The suit concerned arrearages due on the remainder of $923,930.00 worth of Fujitsu Model 6000 IRD (Integrated Receiver-Decoder) devices, equipment used to receive and descramble television signals from satellites. In March 1990 Teknika, who styles itself as a manufacturer and wholesaler of the products, approached SES/LA, a distributor of such products in certain parts of the United States, to purchase the units. Following its purchase of the units, SES/LA in turn sold the units to other distributors for resale by them to their customers.
Teknika filed suit on December 11, 1991. SES/LA answered Teknika's suit, admitting that it had purchased the equipment, but denied owing any money due to the equipment's alleged defects. Additionally, SES/LA reconvened seeking rescission of the sale and damages. Thereafter, the distributors downstream from SES/LA intervened, all seeking to recover damages for the allegedly defective products.
Eventually, Fujitsu General, Limited, the parent corporation of Teknika was joined as an additional defendant by both SES/LA and the intervenors. Fujitsu General excepted to the jurisdiction of the court on grounds that there were insufficient "minimum contacts" between it and the forum state. Although the parties contested some issues before the hearing conducted October 6, 1994, the parties agreed to the following stipulations:
(1) Fujitsu General is a Japanese corporation with its principal office in Japan;
(2) Fujitsu General has an office in New Jersey;
(3) Fujitsu General has no offices in Louisiana;
(4) Fujitsu General has neither appointed any person in Louisiana as its authorized agent for service of process nor is authorized to do business in the state;
(5) Fujitsu General owns no property or assets in Louisiana;
(6) Fujitsu General has employees in New Jersey;
(7) An employee of Fujitsu General went to Evangeline Parish on April 20, 1990;

*1132 (8) Fujitsu General had sent employees to various trade shows in the United States for the purpose of promoting Fujitsu General products.
The trial court granted Fujitsu General's declinatory exception on grounds of lack of personal jurisdiction prompting SES/LA and intervenors to apply for writs to this court, which we granted on September 17, 1995 for additional briefing.
SES/LA and their aligned customers maintain that the trial court erred in holding that Fujitsu General lacked sufficient contacts with Louisiana to warrant a finding of personal jurisdiction. Essentially, relators maintain that the trial court erred in sustaining Fujitsu General's exception on two grounds, first in finding that Fujitsu General did not have minimum contacts in its own regard and, second in concluding that Fujitsu General, as the alter ego of Teknika, did not have sufficient minimum contacts.
In support of their first theory, they argue that Fujitsu General has widespread involvement in the United States economy, and that this involvement extends into Louisiana. In support of this contention, they point out that Fujitsu General owns a substantial interest in several subsidiary corporations, including the Teknika subsidiary involved here, which it wholly owns, through which the company markets its products. They also point out that Fujitsu sent several employees to trade shows within the United States, specifically one in St. Louis, Missouri, where Fujitsu employees assisted Teknika in retaining customers who had previously acquired Fujitsu through Teknika's predecessor.[1] At the St. Louis trade show, Fujitsu employees promoting Fujitsu products were specifically introduced to SES/LA representatives. Additionally, they observe that a Fujitsu General executive was sent to Mamou, Louisiana to conduct a seminar with employees of the complaining parties relating to certain Fujitsu brand products.[2]
Fujitsu General, on the other hand, maintains that SES/LA and the intervenors have not established the sufficient minimum contacts between it and Louisiana to subject the company to jurisdiction in Louisiana, observing that the trade shows attended by Fujitsu General representatives occurred in locations remote from Louisiana. Finally, the third party reconventional defendant notes that its representative's trip to Mamou, Louisiana, in no way concerned the disputed item.
Addressing relators' alter ego theory, Fujitsu General maintains that in no manner had Fujitsu itself solicited business in Louisiana. The fact that Teknika sold "Fujitsu General" brand items is not dispositive where it cannot be shown that the parent and its subsidiary commingled assets or otherwise operated as a sham.[3]
In Mayo v. Tillman Aero, Inc., 93-467 (La.App. 3 Cir. 2/16/94), 640 So.2d 314, from which we quote at length, we had occasion to address the considerations and burden of proof that are relevant to resolution of the issue before us today:
To assert personal jurisdiction over a non-resident defendant, the Louisiana long-arm statute, Louisiana Revised Statutes 13:3201, provides in pertinent part:
Sec. 3201. Personal jurisdiction over nonresidents.
A. A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from any one of the following activities performed by the nonresident:

*1133 (1) Transacting any business in this state.
* * * * * *
(4) Causing injury or damage in this state by an offense or quasi offense committed through an act or omission outside of this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives revenue from goods used or consumed or services rendered in this state.
* * * * * *
(8) Manufacturing of a product or component thereof which caused damage or injury in this state, if at the time of placing the product into the stream of commerce, the manufacturer could have foreseen, realized, expected, or anticipated that the product may eventually be found in this state by reason of its nature and the manufacturer's marketing practices.
B. In addition to the provisions of Subsection A, a court of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the constitution of the state and of the Constitution of the United States.
The intent of this statute is to extend personal jurisdiction of Louisiana courts over nonresidents consistent with the due process clause of the Fourteenth Amendment. Clay v. Clay, 389 So.2d 31 (La.1979), Soileau v. Evangeline Farmer's Co-op, 386 So.2d 179 (La.App. 3d Cir.1980).
Due process requires that, in order to subject a non-resident defendant to a personal judgment, the defendant must have certain minimum contacts with the forum state, such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. de Reyes v. Marine Mgt. and Consulting, Ltd., 586 So.2d 103 (La.1991); see also, Asahi Metal Industry Co., Ltd. v. Superior Court of California, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987); Burger King Corporation v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); World-Wide Volkswagen Corporation v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).
In interpreting the due process clause, the United States Supreme Court has recognized a distinction between two types of personal jurisdictiongeneral and specific jurisdiction. Burger King Corporation, 471 U.S. at 473, 105 S.Ct. at 2182; Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). When a state exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum, the state is exercising specific jurisdiction over the defendant. de Reyes, 586 So.2d at 115. But, when a state exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum, the state is exercising general jurisdiction (emphasis added). de Reyes, supra. Where a forum seeks to exercise specific jurisdiction over an out-of-state defendant who has not consented to suit there, the requirement of meaningful minimum contacts is satisfied when the defendant has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries arising out of or relating to those activities. de Reyes, 586 So.2d at 106. When the cause of action, however, does not arise out of the defendant's purposeful contacts with the forum, due process requires that the defendant be engaged in continuous and systematic contact to support the exercise of general jurisdiction. de Reyes, 586 So.2d at 115. Whether or not a particular defendant has sufficient minimum contacts with a state is to be determined from the facts and circumstances of each case. Funai v. Air Center, Inc., 499 So.2d 669 (La.App. 3d Cir.1986); see also, Drilling Engineering, Inc., v. Independent Indonesian American Petroleum Company, 283 So.2d 687 (La.1973); Soileau, supra.
In Louisiana, regardless of whether personal jurisdiction is being sought under the specific or general jurisdictional analysis, the court must apply a two part due process test: whether the nonresident defendant has established minimum contacts with the forum and whether the maintenance of the suit does not offend traditional notions of fair play and *1134 substantial justice. de Reyes, 586 So.2d at 109.
By requiring that the defendant direct his activities at the forum state either by specific acts targeted, for example, at residents of the forum state or by more general acts that would constitute continuous and systematic business activity in the forum state even though that activity is unrelated to the plaintiff's specific claim, the defendant is in the former example explicitly, and in the latter example, impliedly availing himself of the privileges and protections of the forum state. When a defendant deliberately engages in activities within the forum state or creates continuous obligations between himself and the forum state, he avails himself of the privilege of conducting business there and shields himself with the protection of the forum's laws. de Reyes, 586 So.2d at 106; Asahi. supra; Burger King Corporation, supra; Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984). Based on that conduct by the defendant, the defendant should reasonably anticipate being hailed into court there and, therefore, it would be reasonable to require the defendant to submit to the burdens of litigation in that forum. de Reyes, supra; see also, Burnham v. Superior Court of California, 495 U.S. 604, 110 S.Ct. 2105, 109 L.Ed.2d 631 (1990); Asahi, 480 U.S. at 109, 107 S.Ct. at 1030; Burger King Corporation, 471 U.S. at 476, 105 S.Ct. at 2184; World-Wide Volkswagen, 444 U.S. at 297, 100 S.Ct. at 567. The defendant is thereby insured that he will not be hailed into a jurisdiction solely as a result of a random, fortuitous or attenuated contact and the critical due process considerations are satisfied. See, World-Wide Volkswagen, supra; see also, Burger King Corporation, supra; Keeton, supra; Asahi, supra.
While thus far our review of the courts' minimal contacts analyses has dealt with the majority of opinions where the court focused on the defendant's relationship to the forum state, the courts have also noted that the sufficiency of minimal contacts can in an appropriate case be considered in light of other relevant factors, including the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, at least where that interest is not adequately protected by the plaintiff's power to choose the forum, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies. de Reyes, 586 So.2d at 106; Asahi, 480 U.S. at 113, 107 S.Ct. at 1033; Burger King Corporation, 471 U.S. at 477, 105 S.Ct. at 2184; World-Wide Volkswagen, 444 U.S. at 292, 100 S.Ct. at 564. Consequently, a plaintiff can successfully establish the court's right to assert personal jurisdiction over a non-resident defendant when he presents sufficient minimal contacts that do not alone satisfy due process considerations. For example, when a plaintiff presents sufficient minimal contacts between the defendant and the forum state that might otherwise be relatively limited or small in number, a court may still find the contacts sufficient to satisfy due process requirements when the evidence of contacts or lack thereof is outweighed by the strength of evidence of the other relevant factors outlined in de Reyes. See, Burger King Corporation, supra; Madara v. Hall, 916 F.2d 1510 (11th Cir.1990).
In sum, the courts have held that the inquiry is whether the plaintiff presented sufficient evidence of minimal contacts and whether based on those contacts it is fair and consistent with due process to hail the non-resident defendant into court in the forum state. In addition, the court must consider the weight of evidence of defendant's contacts with the forum against the evidence of the other relevant factors outlined in de Reyes.

Mayo v. Tillman Aero, at 2-5; 640 So.2d at 317-319.
Because the contacts with Louisiana in the case of the excepting party in Mayo "were limited to and dealt exclusively with advertisements in national publications," we concluded that there was no nexus between the party's contact and the suit, and therefore no specific jurisdiction. In addition, we concluded that the company's one or two "fortuitous and random" contacts, even when coupled with the defendant's advertisements in a national *1135 trade journal, did not rise to the level of "continuous and systematic"; therefore, the defendant lacked the necessary minimum contacts upon which a finding of general jurisdiction might be predicated. Mayo, at 7-9; 640 So.2d at 319-320. See also, de Reyes v. Marine Mgt. And Consulting, Ltd, 586 So.2d 103. We concluded that plaintiff failed to meet her burden to create the presumption that the Louisiana court had authority to assert its jurisdiction over the defendant.
The facts of the case at bar distinguish it from those noted in Mayo. Whereas in Mayo the court was asked to invoke its jurisdiction over a relatively small California company that performed mechanical repairs, the current dispute concerns a transnational conglomerate concerned with the production and injection into Louisiana of literally thousands of allegedly defective consumer items.
The other cases cited by Fujitsu General likewise are distinguished. In World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), the Court concluded that a New York retailer and wholesaler of an automobile could not be haled into Oklahoma to defend itself for injuries sustained there. Like the case of Langley v. Oxford Chemicals, Inc., 25,596 (La. App. 2 Cir. 3/30/94); 634 So.2d 950, in which a distributor of allegedly defective child-resistant bottle closures had "virtually no contacts" with the forum state, Woodson did not concern a manufacturer who specifically targeted that forum.[4]Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) arose from a helicopter crash in Peru. When the survivors of American victims killed in the crash sought to bring suit in Texas against the Colombian corporation charged with air transportation, the Colombian company excepted to jurisdiction. The Supreme Court found in favor of its position. Not only did the claims in Helicopteros, unlike those involved in the case sub judice, not arise out of the company's contacts with the forum state (eliminating the possibility of a finding of specific jurisdiction), but its contacts, limited solely to one trip to the forum state by a corporate officer and acceptance of checks drawn on a Texas bank, were insufficient to justify an assertion of general jurisdiction. Thus, like the excepting defendant in Hunt v. Schult Homes Corp., 94-1592 (La.App. 3 Cir. 5/3/95), 657 So.2d 124, the Columbian company's contact with the forum state was such that the company should not have reasonably anticipated being haled into court in Texas. See Woodson, 444 U.S. at 297, 100 S.Ct. at 567.
The facts of the foregoing cases stand in stark contrast to those of the present, where Fujitsu General's contacts with the United States, including the forum state were pervasive, deliberate, and persistent. Having considered all of the evidence, the respective rights and concerns of the litigants, and the interest of the forum state, we conclude that personal jurisdiction attaches to Fujitsu General. Under the circumstances, the legal barriers artfully erected by it are not constitutionally insurmountable, at least for jurisdictional purposes.[5] Teknika would not exist but for funding of its parent; the allegedly defective products would not have been assembled or sold, purposefully, without its financial backing; and, even if available for purchase, probably would not have been without the imprimatur of the parent's name brand and logo.[6] Having been so vital *1136 to the product's introduction to and sale in the Louisiana market, it seems a bit incongruous for Fujitsu to now cry foul; indeed, without the parent company's active and continuous support, there would be no dispute, for the allegedly defective products would not have been marketed or distributed in this jurisdiction. Clearly, SAS/LA and its cohorts established the existence of minimum contacts on the part of Fujitsu General, Ltd.
After relators demonstrated sufficient minimum contacts on the part of Fujitsu General, the burden shifted to Fujitsu General to prove that the jurisdiction was so unreasonable as to overcome the weight of the presumption. de Reyes v. Marine Mgt. And Consulting, 586 So.2d at 111. Fujitsu General made no showing in this regard; that is, the company "failed to show that defense of the suit in the forum would be so gravely difficult and inconvenient as to place it at a severe disadvantage in comparison with its opponent," Id. Thus, unlike the trial court, we conclude that personal jurisdiction may be asserted over Fujitsu General, and remand the matter for further proceedings.
REVERSED AND REMANDED.
SULLIVAN, Judge, dissenting.
I respectfully dissent. The contacts of the defendant-in-reconvention, Fujitsu General, Limited, are, in my opinion, not sufficient to establish jurisdiction.
SULLIVAN, J., dissents and assigns written reasons.
NOTES
[1] Prior to 1990, Fujitsu also marketed its products through the California-based Janiel Corporation, subsequently acquired by Fujitsu.
[2] According to relators, although the Fujitsu General employee did not discuss the allegedly defective products, his trip to Mamou further suggested the intent of Fujitsu General to target Louisiana and the other distribution territories represented by the intervenors.
[3] To quote Fujitsu General's averments: "SES/LA continually failed to distinguish between the brand name Fujitsu General and corporate entity Fujitsu General, Limited," the party herein, and "continued to ignore the corporate separateness of Teknika Electronics, Inc. and its parent, Fujitsu General, Limited."
[4] Indeed, the court observed that "if the sale of a product of a manufacturer or distributor ... is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve directly or indirectly, the market for its product in other states, it is not unreasonable to subject it to suit in one of those states if its allegedly defective merchandise has been the source of injury to its owner or to others." Woodson, 444 U.S. at 297, 100 S.Ct. at 567. In Woodson, we observe, personal jurisdiction with respect to the automobile manufacturer was never at issue.
[5] We are not called to consider, and do not reach, the question of Fujitsu General, Limited's liability. We merely hold that the company is amenable to this state's jurisdiction.
[6] Fujitsu General conceded that it arranged the necessary financing and letters of credit for Teknika to have the allegedly defective equipment manufactured and permitted Teknika to have the equipment branded as a "Fujitsu" product. Additionally, the parent and its wholly owned subsidiary share office space in New Jersey, raising in this court's mind the presumption that they have an ongoing collaboration. Additionally, although perhaps not dispositive in its own right, advertisements taken by Teknika in trade journals published in Louisiana and throughout the United States espoused the reputation for reliability found in Fujitsu (not Teknika) products, including the assertion that "our [Fujitsu] name on a product means that youand your customerswill get rock-solid dependability in every respect...."