790 So.2d 43 (2000)
Ronnie DAVIS, et al.
v.
DEMPSTER, INC., et al.
No. 00-662.
Court of Appeal of Louisiana, Third Circuit.
November 29, 2000.
Writ Denied February 9, 2001.
*44 James A. Bolen, Jr., Bolen, Parker & Brenner, LTD, Alexandria, LA, Counsel for Defendant and Appellee.
Roy Seale Halcomb, Jr., Broussard, Bolton, Halcomb & Vizzier, Alexandria, LA, Counsel for Plaintiff and Appellant.
Russell L. Potter, Stafford, Stewart & Potter, Alexandria, LA, Bruce Byron McKeithen, McKeithen & McKeithen, Monroe, LA, Counsels for Defendant and Appellee.
Court composed of Judge BILLIE COLOMBARO WOODARD, Judge MARC T. AMY and Judge MICHAEL G. SULLIVAN.
AMY, Judge.
The plaintiff filed suit alleging he sustained injury from a faulty turnbuckle assembly on a waste disposal truck. Among the defendants named was the parent company of the alleged manufacturer. The company asserted lack of personal jurisdiction for the suit brought against it by the plaintiffs as well as third-party plaintiffs. The trial court found in favor of the parent company. The plaintiff appeals. For the following reasons, we affirm.

Factual and Procedural Background
The plaintiff, Ronnie Davis, alleges that while working for Browning-Ferris Industries (BFI), he sustained injuries due to the breaking of a turnbuckle assembly on *45 a waste disposal truck. Davis contends that the failure of the component resulted in the tailgate coming loose and striking him. Although other defendants were named in the subsequently filed suit, those relevant to this suit are Rittiner Equipment Co., Inc. (Rittiner), the Louisiana dealer who brokered the purchase of the truck by BFI, the alleged manufacturer, and the manufacturer's parent company.
As the manufacturer and its parent company have appeared in various incarnations due to sales and mergers, a brief description of the histories of each is in order. The truck at issue was manufactured in 1984 by Dempster Systems, Inc., a wholly owned subsidiary of Technology, Inc. Both of the companies were foreign corporations. Technology, Inc. subsequently became Krug International Corp.
In 1990, Dempster Systems, Inc. was sold to WQ Acquisition Company. WQ Acquisition Company subsequently changed its name to Dempster, Inc. and, again, to WQD, Inc. The subsidiary company, Dempster Systems, Inc., became Krug Properties, Inc. For purposes of this review, the parent corporation will be referred to as Krug International and the manufacturer will be referred to as Dempster Systems, Inc.
Dempster Systems, Inc. and Krug International filed exceptions of lack of personal jurisdiction. They each alleged that they are foreign corporations and that insufficient contacts existed with Louisiana for personal jurisdiction. The exception filed by Dempster Systems, Inc. was denied, a decision not at issue. That filed by Krug International was granted with the trial court rendering the following written reasons:
Before the Court is defendant's, Krug International Corporation's, Exception of Lack of Personal Jurisdiction.
Considering the law, facts, and jurisprudence, the Court finds that its exercise of jurisdiction over a subsidiary corporation is, standing alone, not sufficient to warrant the assertion of jurisdiction over a parent corporation. As such, this Court lacks personal jurisdiction over Krug International Corporation.
Accordingly, Krug International Corporation's Exception of Lack of Personal Jurisdiction must be sustained.
The plaintiff has appealed the decision, alleging the existence of contacts sufficient for the exercise of personal jurisdiction.

Discussion of the Merits
In arguing that personal jurisdiction exists, the plaintiff points to evidence indicating that Rittiner acted as the exclusive distributor for Dempster Systems products in Louisiana and that the exercise of jurisdiction over Dempster Systems is no longer at issue. The plaintiff contends that through this relationship, Krug International delivered products into the stream of commerce. According to the plaintiff, this delivery was accomplished with knowledge that the products would be purchased by consumers in Louisiana. As evidence of this relationship, the plaintiff points to correspondence containing the name of the parent company and the role played by Krug International in the 1990 sale of the subsidiary.
The guidelines for a Louisiana court's exercise of personal jurisdiction over nonresidents is set forth in La.R.S. 13:3201, which provides:
A. A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from any one of the following activities performed by the nonresident:
(1) Transacting any business in this state.

*46 (2) Contracting to supply services or things in this state.
(3) Causing injury or damage by an offense or quasi offense committed through an act or omission in this state.
(4) Causing injury or damage in this state by an offense or quasi offense committed through an act or omission outside of this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives revenue from goods used or consumed or services rendered in this state.
(5) Having an interest in, using or possessing a real right on immovable property in this state.
(6) Non-support of a child, parent, or spouse or a former spouse domiciled in this state to whom an obligation of support is owed and with whom the nonresident formerly resided in this state.
(7) Parentage and support of a child who was conceived by the nonresident while he resided in or was in this state.
(8) Manufacturing of a product or component thereof which caused damage or injury in this state, if at the time of placing the product into the stream of commerce, the manufacturer could have foreseen, realized, expected, or anticipated that the product may eventually be found in this state by reason of its nature and the manufacturer's marketing practices.
B. In addition to the provisions of Subsection A, a court of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the constitution of this state and of the Constitution of the United States.
Given the contents of Subsection B, the applicable inquiry into the existence of personal jurisdiction over a nonresident is whether an assertion of such jurisdiction satisfies constitutional due process requirements. Fox v. Board of Sup'rs, 576 So.2d 978 (La.1991). As acknowledged by the Louisiana Supreme Court, "[t]he limits of the Louisiana long arm statute and the limits of constitutional due process are coextensive and therefore, if the assertion of jurisdiction meets the constitutional requirements of due process, the assertion of jurisdiction is authorized under the long arm statute." Id. at 983.
In International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), the United States Supreme Court concluded that due process is satisfied when a court can exercise personal jurisdiction over a defendant in the presence of minimum contacts with the forum state adequate so that traditional notions of fair play and substantial justice are not offended. This contact with the forum state must be sufficient for the party to "reasonably anticipate being hailed into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).
The Louisiana Supreme Court observed in de Reyes v. Marine Management and Consulting, Ltd., 586 So.2d 103 (La.1991), that personal jurisdiction may be either general or specific. When the suit arises out of or is related to a defendant's contacts with the forum state, the exercise of personal jurisdiction is one of specific jurisdiction. Id., quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528(1985). However, if the exercise of jurisdiction arises in a case not stemming from the defendant's contacts with the forum, the exercise of personal jurisdiction is one of general jurisdiction. Id. When this latter category is in question, a defendant may be subject to the forum state's exercise of personal jurisdiction if contacts with the state are continuous and systematic. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 *47 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).
In de Reyes, 586 So.2d 103, the Louisiana Supreme Court explained that whether proceeding under a theory of general jurisdiction or one involving specific jurisdiction, the analysis is the same. Under either theory, a determination as to whether due process standards have been met requires a two-part analysis of 1) minimum contacts with the forum state and 2) consideration of whether maintenance of the suit is consistent with notions of fair play and substantial justice. Id. See also Teknika Electronics Corp. v. Satellite Earth Stations of Louisiana, Inc., 95-663 (La.App. 3 Cir. 4/17/96); 673 So.2d 1129, writ denied, 96-1268 (La.6/28/96); 675 So.2d 1125.
Considering the requirements of this two-part test in de Reyes, 586 So.2d at 106-07, the Louisiana Supreme Court explained:
[W]here the defendant deliberately engaged in significant activities within a state, or has created continuing obligations between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by the benefits and protections of the forum's laws it is presumptively not unreasonable to require the defendant to submit to the burdens of litigation in that forum as well. Burnham v. Superior Court of California, 495 U.S. 604, 110 S.Ct. 2105, 2124-25, 109 L.Ed.2d 631 (1990)(Brennan, J., concurring); Asahi Metal Industry Co., [Ltd. v. Superior Court of California,] 480 U.S. [102] at 109, 107 S.Ct. [1026] at 1030 [, 94 L.Ed.2d 92 (1987)]; Burger King Corp., 471 U.S. at 476, 105 S.Ct. at 2183; World-Wide Volkswagen, 444 U.S. at 297, 100 S.Ct. at 567.
Once it has been decided that a defendant purposefully established such minimum contacts within the forum state, a presumption arises that jurisdiction is reasonable and the burden of proof and persuasion shifts to the defendant opposing jurisdiction to present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Burger King Corp., 471 U.S. at 477, 105 S.Ct. at 2185. See also Haisten v. Grass Valley Medical Reimbursement Fund, Inc., 784 F.2d 1392 (9th Cir.1986). Most such considerations usually may be accommodated through means short of finding jurisdiction unconstitutional, such as choice of law rules. Burger King Corp., 471 U.S. at 477, 105 S.Ct. at 2185; Burnham v. Superior Court, 110 S.Ct. at 2125. Nevertheless, minimum requirements inherent in the concept of fair play and substantial justice may defeat the inference of reasonableness of jurisdiction even if the defendant has purposefully engaged in forum activities reflected by sufficient minimum contacts. Asahi Metal Industry Co., 480 U.S. at 113, 107 S.Ct. at 1033; Burger King Corp., 471 U.S. at 478, 105 S.Ct. at 2185; World-Wide Volkswagen, supra. Jurisdictional rules may not be employed in such a way as to make litigation so gravely difficult and inconvenient that a party is unfairly placed at a severe disadvantage in comparison to his opponent. Burger King Corp., 471 U.S. at 478, 105 S.Ct. at 2185.
. . . .
In summary, under this two-part test, the burden of showing minimum contacts lies with the party claiming jurisdiction to be proper. Once this burden is met, a presumption of reasonableness of jurisdiction arises. The burden then shifts to the opposing party to prove the assertion of jurisdiction would be so unreasonable *48 in light of traditional notions of fair play and substantial justice as to overcome the presumption of reasonableness created by the defendant's minimum contacts with the forum. See Wright and Miller, Federal Practice and Procedure § 1067, pp. 301-2.
Applying this two-fold test to the case at hand, we find no error in the trial court's determination that contacts sufficient for its exercise of personal jurisdiction do not exist in this case.
The plaintiff seems to argue that personal jurisdiction over the parent company is appropriate due to the conduct of the wholly owned subsidiary, Dempster Systems, an entity that no longer contests whether it is subject to an exercise of personal jurisdiction by a Louisiana court. Alternatively, the plaintiff maintains that Krug International's conduct, alone, is sufficient for an exercise of personal jurisdiction. Specifically, the plaintiff points to correspondence between Dempster Systems and Rittiner or Dempster Systems and the purchasers which indicates that Dempster Systems was a subsidiary of the defendant. The plaintiff points out that this information was also on labels placed on trucks sold in Louisiana. Finally, the plaintiff points to Krug International's conduct in the 1990 sale of the assets and business of Dempster Systems.
Turning first to the question of Krug International's ownership of the subsidiary over whom personal jurisdiction has been found to be proper, we conclude that the plaintiff's evidence, which establishes the above contacts, is insufficient to establish jurisdiction over the parent. In Dalton v. R & W Marine, Inc., 897 F.2d 1359, 1363 (5th Cir.1990), the United States Court of Appeals, Fifth Circuit applied its previous ruling in Hargrave v. Fibreboard Corp., 710 F.2d 1154 (5th Cir.1983) to a case involving the Louisiana long-arm statute and explained:
Even if Midland [the parent company of the plaintiff's employer] and Hartley [the parent company of Midland] have insufficient contacts with Louisiana in their own right, Dalton contends, jurisdiction is warranted because Midland is the "alter ego" of its Louisiana subsidiaries and Hartley is the "alter ego" of Midland. Although the mere existence of a parent-subsidiary relationship will not support the assertion of jurisdiction over a foreign parent, there may be instances in which the parent so dominates the subsidiary that "they do not in reality constitute separate and distinct corporate entities...." Hargrave v. Fibreboard Corp., 710 F.2d 1154, 1159 (5th Cir.1983) (citations omitted); Southmark Corp. v. Life Investors, Inc., 851 F.2d 763 (5th Cir.1988). Hargrave considered the following factors in determining whether a parent's control exceeded the norm: (1) the parent owned 100% of the subsidiary's stock; (2) the two corporations had separate headquarters; (3) they had no common officers and only one common director; (4) they observed corporate formalities; (5) they maintained separate accounting systems; (6) the parent exercised complete authority over general policy; and (7) the subsidiary exercised complete authority over daily operations, including research and development, marketing, and supply. 710 F.2d at 1160.
Several factors point to Midland as the alter ego of its subsidiaries. Midland owns 100% of its subsidiaries and remains responsible for general policy. Its subsidiaries funnel their revenues into centralized bank accounts and file a consolidated federal tax return with Midland. Finally, Midland offers benefit plans to its subsidiaries' employees. Nonetheless, these factors are out-weighed, *49 albeit modestly, by the fact that Midland observes corporate formalities, makes it subsidiaries responsible for daily operations including all personnel decisions, and allows each subsidiary to keep its records and accounts in separate books and file its own state tax return. Having concluded that Midland cannot be considered the alter ego of its subsidiaries, we need not address whether Hartley can be considered the alter ego of Midland. Thus we perceive no basis on which we can conclude that either Midland or Hartley has purposely availed itself of contacts of a quality or nature that would support subjecting them to the jurisdiction of a Louisiana forum.
See also Kelly v. Syria Shell Petroleum Dev., 213 F.3d 841 (5th Cir.2000).
The plaintiff's evidence does not demonstrate that any of the degree of control discussed above as necessary was present in the Krug International/Dempster Systems relationship. While such control may very well have existed, we simply do not see any indication of adequate control in the evidence presented by the plaintiff. In fact, the evidence demonstrates only that Dempster Systems was Krug International's wholly owned subsidiary and that it participated in the sale of the company. While the Asset Purchase Agreement related to Krug International's sale of the subsidiary hints at the nature of the relationship at that time, it is inadequate to confer the type of proof necessary here. Nowhere does the evidence reveal whether the parties shared common directors,[1] whether corporate formalities were followed, or anything regarding the companies' accounting systems. The evidence also fails to establish the degree of authority Krug International exercised over general policy or the degree of authority Dempster Systems exercised over daily operations. As can be seen by reference to the cases above, a showing of simple ownership, alone, is insufficient to support an exercise of personal jurisdiction. Because that is essentially all the plaintiff has demonstrated, this argument fails.
We next address whether the plaintiff established the existence of minimum contacts due to the conduct of Krug International acting in its own right. Evidence of this too is insufficient to satisfy the plaintiff's burden. The plaintiff argues that Krug International acted in Louisiana in a number of ways. He points out that the logo on correspondence, materials, and warranties generated by Dempster Systems identified the company as "A subsidiary of Technology Incorporated[,]"[2] and the parent company's name appeared on a logo placed on the trucks. The plaintiff also points to the sale of Dempster Systems and Krug International's actions/responsibilities in the transaction. The Asset Purchase Agreement between Krug International and the purchaser was submitted as evidence of these actions. The plaintiff suggests that Krug International's obligations therein are evidence of the parent corporation's close control over the subsidiary. As seen above, if sufficient, this type of control can permit an *50 exercise of personal jurisdiction over a parent company. The plaintiff argues that a number of things are indicative of such control. Among other things, Krug International agreed to maintain insurance for Dempster Systems until the close of sale, to send notices regarding employee plans to the purchaser, to have its Board of Directors assess and confirm the fair market value of the assets to be paid in the sale, and to accept all correspondence regarding the sale. The plaintiff also asserts in brief that "apparently [Krug International] and Dempster Systems, Inc.[ ], share the same corporate headquarters according to a statement to that effect made in the Limited Warranty Deed executed in connection with the sale of all the assets and business operations of Dempster Systems, Inc.[]."
This evidence is insufficient. The plaintiff's arguments regarding the presence of the company's name on correspondence, etc. fails to indicate who controlled the inclusion, whether it was the parent or the subsidiary. In any event, it was clearly contained on articles generated not by the parent, but the subsidiary. The remainder of the arguments regarding indicia of control contained within the purchase agreement are also without merit. The purchase agreement, of course, contains evidence of Krug International's involvement in the sale of the subsidiary. The type of control described by the plaintiff, and evidenced by the purchase agreement, are indicative of Krug International's ownership of the subsidiary, not of its control of the subsidiary's operations. If there was conduct in Louisiana, this evidence fails to demonstrate it.
We also address the plaintiff's contention that this matter is controlled by the Louisiana Supreme Court's decision in Ruckstuhl v. Owens Corning Fiberglas Corp., 98-1126 (La.4/13/99); 731 So.2d 881. In Ruckstuhl, the supreme court considered a personal jurisdiction question concerning both the parent company and its wholly owned subsidiary who "manufactured, sold, and/or distributed" asbestos-containing filter material to a manufacturer that ultimately used it as a component part incorporated into cigarettes used throughout the world and, specifically in that case, in Louisiana. After finding application of "stream of commerce" cases from the United States Supreme Court unnecessary, the court used a traditional sufficiency of contacts analysis in concluding that the conduct in question was sufficient for the exercise of personal jurisdiction over both the parent company and its subsidiary. While Ruckstuhl offers guidance regarding the analysis applied in personal jurisdiction cases, the facts of the case, as written, indicate that the issue before the supreme court differed from that presented by the present case. Ruckstuhl does not indicate that the parent company, H & V, was contesting an exercise of personal jurisdiction independently of the subsidiary manufacturer. Rather, the opinion refers interchangeably to "H & V, or its subsidiary." Id. at p. 13; 890. Although the reasoning contained therein may very well be relevant insofar as Dempster Systems is concerned, it does not stand for the proposition urged by the plaintiff, i.e., that personal jurisdiction over the parent company is permissible due to the conduct of a subsidiary manufacturer. Here, the parent company appears and contests personal jurisdiction only in its own right, the type of factual background presented in Dalton, 897 F.2d 1359, Hargrave, 710 F.2d 1154, and Kelly, 213 F.3d 841, and discussed above. Accordingly, we find no error in the trial court's determination that it lacks personal jurisdiction over Krug International.

*51 DECREE
For the foregoing reasons, the trial court's determination to sustain Krug International Corporation's Exception of Lack of Personal Jurisdiction is affirmed. All costs of this appeal are assigned to the plaintiffs, Ronnie Davis and Lena Davis.
AFFIRMED.
NOTES
[1] The plaintiff points out that the purchase agreement contains signatures by Thomas W. Kemp in his capacity as Treasurer of Dempster Systems and in his capacity as Vice-President of Finance of Krug International. While this type of evidence is revealing insofar as this single individual, who apparently served in different capacities with each company, we do not consider it, alone, as indicative of control by a common board of directors.
[2] Again, the parent company has been through a number of incarnations. For purposes of this opinion, the company is referred to as Krug International.