I Judge DENNIS R. BAGNERIS, SR.
The sole question in this appeal is whether the defendant-appellee, Richard Dymond (“Mr.Dymond”), has. sufficient minimum contacts with the state of Louisiana to justify the assertion of general jurisdiction by Louisiana courts. The-plaintiff-appellant, Larry Dedeaux (“Mr.Dedeaux”), appeals a trial court judgment dismissing his suit for lack of personal jurisdiction, lack of subject matter jurisdiction and improper venue. For the reasons described below, we affirm the trial court.

FACTS AND PROCEDURAL HISTORY

The suit underlying this claim is a personal injury claim arising out of injuries Mr. Dedeaux allegedly received on July 25, 1995, while he was engaged in the course and scope of his employment for Mississippi Trucking, Inc., a company located in Picayune, Mississippi. Mr. Dedeaux lives in Mississippi. On this date, Mr. Dedeaux was making a delivery to the Folgers Coffee Plant, located in New Orleans, Louisiana. Mr. Dedeaux alleges that a cable holding a door broke, causing the door to fall onto Mr. Dedeaux, striking him on the neck and back. Mr. | ¡.Dedeaux immediate *940 ly received medical treatment at Methodist Hospital in New Orleans, where he was treated overnight and then released.
Mr. Dymond is an attorney located in Gulfport, Mississippi. Mr. Dedeaux alleges that after his accident, he called Mr. Dymond to set up an appointment based on a referral from Mr. Dedeaux’s brother. Mr. Dedeaux further alleges that shortly thereafter, he went to Mr. Dymond’s office to sign a contract hiring Mr. Dymond to represent his interests in this accident. According to Mr. Dedeaux, Mr. Dymond represented to him that Mr. Dymond was also licensed to practice law in the state of Louisiana and, therefore, could file the suit and handle it in Louisiana on Mr. De-deaux’s behalf.
Mr. Dedeaux alleges that after this initial meeting with Mr. Dymond, he basically could no longer get in touch with Mr. Dymond. According to Mr. Dedeaux, Mr. Dymond would not return his calls, and he was never in his office when Mr. Dedeaux went to see him regarding his case. On these occasions, Mr. Dedeaux states that he requested his file from Mr. Dymond’s secretary, who refused to give it to him, saying that she had to get Mr. Dymond’s permission first. Mr. Dedeaux states that he never received this file. Mr. Dedeaux further states that when his new attorney called Mr. Dymond to request Mr. De-deaux’s file, Mr. Dymond advised the attorney that he had “no file” on Mr. De-deaux. Mr. Dedeaux alleges that as a result of Mr. Dymond’s negligence and misrepresentation, he failed to file Mr. De-deaux’s personal injury suit in Orleans Parish, Louisiana, thereby causing Mr. De-deaux to sustain damages in that he was denied the 13opportunity to recover on his tort claim against those parties responsible for his injuries.
In response, Mr. Dymond argues a different version of the facts. He states that Mr. Dedeaux is the brother of a social acquaintance of his, and Mr. Dedeaux visited Mr. Dymond’s office on no more than two occasions. Mr. Dymond states that he spoke with Mr. Dedeaux on both of these occasions. Mr. Dymond further states that whenever Mr. Dedeaux visited his offices, it was with another client of Mr. Dymond’s, whom Mr. Dymond was representing on a DUI charge.
Mr. Dymond argues that he never made any representation to Mr. Dedeaux that he would represent him in a matter pending in Louisiana, as he is not licensed in Louisiana. Mr. Dymond states that he told Mr. Dedeaux that he would, however, consider representing Mr. Dedeaux on a Mississippi Workman’s Compensation claim, but only in the event that Mr. Dedeaux had a surgical procedure which would justify Mr. Dymond being involved from the standpoint of future disability and ability to reach a meaningful Workman’s Compensation settlement on Mr. Dedeaux’s behalf.
Mr. Dymond states that he did not sign a retainer or a contingency fee contract or agreement with Mr. Dedeaux to represent him in any matter, whether it be a Mississippi Workman’s Compensation or Louisiana third-party suit. Mr. Dymond also states that he had no contact with the State of Louisiana in representation of Mr. Dedeaux in any matter whatsoever, whether it be investigation, filing pleadings, or any legal matter, as it would have been a violation of the law in Louisiana because he has no license to practice law in Louisiana.
|4On July 10, 1997, Mr. Dedeaux filed a Petition for Damages for Mr. Dymond’s alleged breach of fiduciary duty and legal malpractice in the Civil District Court of Orleans Parish. On August 20, 1997, Mr. Dymond filed Exceptions of Lack of Subject Matter Jurisdiction, Lack of Personal *941 Jurisdiction and Improper Venue. The trial court rendered a minute entry on November 10, 1998, advising the parties that it was taking the matter under advisement. The trial court gave Mr. Dymond until November 20, 1998 to submit evidence or memo of law to the court to support his Exceptions. On November 17, 1998, Mr. Dymond submitted an affidavit in support of his Exceptions to the court. On April 15, 1999, the trial court issued a judgment granting Mr. Dymond’s jurisdictional exceptions. In her written reasons, the trial court judge stated, in pertinent part, as follows:
“This Court clearly has no jurisdiction over this case, in that the alleged contract between the plaintiff and the defendant, was entered into in the state of Mississippi. The fact that the initial cause of action arose and prescribed in the state of Louisiana is of no consequence, as the instant suit is one for malpractice of an alleged contract for employment, which occurred in Mississippi. Therefore, the Court grants the defendant’s exception of lack of subject matter jurisdiction, lack of jurisdiction over the person, and improper venue.”

LAW AND DISCUSSION

La. R.S. 13:3201, also known as the Louisiana Long Arm Statute, provides for personal jurisdiction over nonresidents. In determining whether jurisdiction exists under the long-arm statute, the sole inquiry is whether the assertion of jurisdiction complies with constitutional due process. Delay v. Charbonnet, 627 So.2d 720 (La. App. 4th Cir.1993); Fox v. Board of Supervisors of La. State University, 576 So.2d 978 (La.1991).
| fiThe due process test requires that in order to subject a nonresident defendant to a personal judgment, the defendant must have certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. Ruckstuhl v. Owens Corning Fiberglas Corp., 98-1126 (La.4/13/99), 731 So.2d 881, cert. denied, Hollingsworth & Vose Co. v. Ruckstuhl, 528 U.S. 1019, 120 S.Ct. 526, 145 L.Ed.2d 407 (1999); International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).
This due process test has evolved into a two-part test, the first part being the “minimum contacts” prong, which is satisfied by a single act or actions by which the defendant “purposefully avails itself of the privilege of conducting activities -within the forum state, thus invoking the benefits and protections of its laws.” Ruckstuhl, supra; Burger King Corp. v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). The nonresident’s “purposeful availment” must be such that the defendant “should reasonably anticipate being hailed into court” in the forum state. Ruckstuhl, supra; World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)
The second part of the due process test centers on the fairness of the assertion of jurisdiction. Hence, once the plaintiff meets his burden of proving minimum contacts, “a presumption of reasonableness of jurisdiction arises” and “the burden then shifts to the opposing party to prove the assertion of | ^jurisdiction would be so unreasonable in light of traditional notions of fair play and substantial justice as to overcome the presumption of reasonableness created by the defendant’s minimum contacts with the forum.” (Emphasis- Added) Ruckstuhl, supra; de de Reyes v. Marine Management *942 and Consulting, Ltd., 586 So.2d 103 (La.1991).
Both the United States Supreme Court and the Louisiana State Supreme Court have recognized the distinction between “general” and “specific” jurisdiction. When a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant’s contacts with the forum State, the State is exercising “specific jurisdiction” over the defendant. But when a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant’s contacts with the forum State, the State has been said to be exercising “general jurisdiction” over the defendant. Cantuba v. American Bureau of Shipping, 97-2882 (La.App. 4 Cir. 3/4/98), 709 So.2d 263; de Reyes, supra, citing Helicopteros Nacionales de Colombia, S.A v. Hall, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).
Where a forum State seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, the requirement of meaningful contacts is satisfied if the defendant has purposefully directed his activities at residents of the forum State, and the litigation results from alleged injuries that arise out of or are related to those activities. Cantuba, supra; de Reyes, supra.
[7When the cause of action does not arise out of the defendant’s purposeful contacts with the forum State, due process requires that the defendant engage in continuous and systematic conduct to support the exercise of general jurisdiction. Cantuba, supra; Helicopteros, supra. In a general jurisdictional case, the threshold for these contacts is higher and more substantial than required in a specific jurisdictional case (Emphasis Added). Cantuba, supra; Cadawas v. Skib-saksjeselskapet Storli, Bergin, 630 So.2d 289 (La.App. 5th Cir.1993).
The record contains an affidavit of Mr. Dymond as well as Mr. Dedeaux’s deposition. Both of these documents establish several facts pertinent to the issue of jurisdiction. According to his affidavit, Mr. Dymond is at attorney licensed only in the State of Mississippi, who has practiced primarily in the Gulf Coast area since 1978, having graduated from law school at Mississippi College in 1977, and only having taken and been admitted to the Mississippi bar. Mr. Dymond operates his law practice as a sole-practitioner in Gulfport, Mississippi, and he has no other office location. In his affidavit, Mr. Dymond also states that he never signed a retainer or contingency fee contract or agreement with Mr. Dedeaux to represent him in any matter, whether it be Mississippi Workman’s Compensation or a Louisiana third-party suit. We note that the record does not contain any such agreement. Mr. Dy-mond had no contact with the State of Louisiana in the representation of Mr. De-deaux in any matter whatsoever. Mr. Dy-mond is not licensed to practice law in Louisiana. The only contact that Mr. Dy-mond had with Mr. Dedeaux took place in Mississippi. Mr. Dedeaux has filed a Mississippi | ¡/Workman's Compensation claim, which is being supervised out of Jackson, Mississippi, and Mr. Dedeaux has also filed another claim with the same set of facts and circumstances and cause of action as this one. Mr. Dedeaux filed this claim in the Circuit Court of Harrison County, Mississippi, First Judicial District. All of the witnesses thus far deposed have been from Mississippi and were deposed in Mississippi.
In his deposition, Mr. Dedeaux confirmed that at the time of his accident, he was working for a Mississippi employer. He has lived in Mississippi his whole life, *943 and he continues to live there. Mr. De-deaux confirmed that he votes in Mississippi; he has a Mississippi driver’s license; and he files income tax returns in Mississippi. Further, Mr. Dedeaux stated that, in addition to the malpractice suit against Mr. Dymond, he also has a Workman’s Compensation suit filed in both Mississippi and Louisiana. Finally, Mr. Dedeaux stated that he has never paid any money to Mr. Dymond.
In the instant case, the cause of action does not arise out of Mr. Dymond’s purposeful contacts with Louisiana. Therefore, Mr. Dedeaux is attempting to have a Louisiana court exercise general, as opposed to specific, jurisdiction over Mr. Dymond. Mr. Dedeaux, as the plaintiff, bears the burden of proving that Mr. Dy-mond possesses the minimum contacts necessary to justify a Louisiana court’s exercise of jurisdiction over Mr. Dymond, and, because this is a general jurisdiction case, this burden is even more substantial. After a careful review of the record evidence, we find that Mr. Dedeaux has failed to meet his burden of 19proving that Mr. Dymond possesses the requisite minimum contacts with Louisiana. Therefore, the trial court judge was correct when she granted Mr. Dymond’s Exceptions.
In his brief, Mr. Dedeaux takes issue with the fact that Mr. Dymond only submitted an affidavit in support of the exceptions. Mr. Dedeaux argues that this affidavit is incompetent evidence and should not have even been considered by the trial court. We disagree. However, we preter-mit any discussion of this assignment of error, as it is of no consequence because Mr. Dedeaux failed to even meet his burden of proof. Therefore, we do not need to examine in depth whether or not Mr. Dymond’s affidavit alone was competent evidence.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

AFFIRMED.